After nine years of marriage, Clyde E. Dorn sued A. Elaine Dorn for a divorce. Elaine answered the complaint and counter-claimed for a divorce. Both parties sought custody of their 5-year-old son. We note that Clyde's daughter, 15 years old at the time of the proceedings, had resided with the parties throughout the 9-year marriage.
Clyde, the father, requested a temporary restraining order. The trial court granted the temporary restraining order and terminated Elaine's, the mother's, unsupervised visitation with the child. A hearing was held, and the court appointed a guardian ad litem. The court ordered the parties to meet and make an agreement for temporary custody of the child pending the final hearing. The parties agreed to rotate custody of the child on a weekly basis. The parties later disagreed over the arrangement and could not reach an agreement on custody. The guardian ad litem recommended, and the court ordered, that the Department of Human Resources (DHR) be given custody of the child. Thereafter, the child resided with foster parents until the final hearing.
After conducting a hearing for several days, the court entered a judgment divorcing the parties and awarding the parties joint legal custody of the child, with the mother having primary physical custody of the child and the father receiving visitation privileges. The court ordered the father to enroll in anger-management and parenting classes and ordered the mother to enroll in substance-abuse and parenting classes. The father appeals, arguing that the trial court *Page 556 
erred in awarding the mother physical custody of the child.
We note that the judgment of a trial court following ore tenus proceedings is presumed correct and will not be reversed on appeal unless it is plainly and palpably wrong. Corl v. Corl,560 So.2d 774 (Ala.Civ.App. 1990).
The record contains a detailed recommendation from the guardian ad litem. The guardian ad litem stated the following concerns about the father:
 "[The father] is a controlling and abusive husband and father that has said negative things in front of the minor child and used derogatory remarks to describe the [mother] in front of the minor child; that the [father] spends the majority of his time watching television or following the minor child's mother; that the [father] saw no wrong in allowing the minor child to take a bath with his 14-year-old step-sister; that the [father] has a history of being an alcoholic, has been investigated for child molestation, and has been [accused] of murder; that the [father] has failed to pay child support and to maintain a parental relationship with his other 3 children."
The guardian also had concerns about the mother:
 "[T]he [mother] lacks stability; that she has admitted driving with the minor child after consuming alcoholic beverages; that she has admitted not using proper child restraints while transporting the minor child; that she has been diagnosed with situational depression and thereafter failed or refused to take her prescribed medication; that she threatened to leave the State with the minor child; that she engaged in a lesbian relationship while the minor children were in close vicinity; that she slapped her stepdaughter; that she has written bad checks; that she lied to the Court regarding the loss of her job; that she had sexual relations with a man prior to obtaining a divorce from the [father]; and she failed to obtain counselling after the same was recommended to her by a psychiatrist."
The guardian ad litem recommended that DHR maintain legal custody of the child, with the mother having physical custody and the father having "extensive" visitation.
The testimony about the father's arrests showed that he had been arrested in 1971 for murder and for child molestation in 1985. However, both of the charges were dropped. The father was convicted of driving under the influence and of public intoxication in the 1980s. The father testified that he had not been intoxicated since his daughter was born, and there was no evidence presented to the contrary. There was disputed testimony that the father had physically abused the mother and there was evidence presented to show that the father had been stalking the mother.
Before the final hearing, the mother moved to North Carolina, to live with her mother.
When there has been no prior judgment granting custody to either parent, the correct standard to be applied in determining custody is "the best interest of the child." Ex parte Couch,521 So.2d 987 (Ala. 1988); C.L.C. v. J.D.A., 690 So.2d 365
(Ala.Civ.App. 1996). The "best interest" standard places the parents on equal ground for the purpose of determining custody. Id. In determining what is in the child's best interest, the court may consider such factors as the age and sex of the child; the child's emotional, social, moral, material, and educational needs; the respective home environments offered by the parties; the age, character, stability, and mental and physical health of each parent; the capacity of each parent to provide for the needs of the child; and the relationship of the child to each parent.Black v. Black, 625 So.2d 450, 453 (Ala.Civ.App. 1993).
The father claims that the trial court erred in not considering § 30-3-131, Ala. Code 1975, which provides,
 "In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in *Page 557 
sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child."
(Emphasis added.) "`[D]omestic or family abuse' means an incident resulting in abuse, stalking, assault, harassment, or the attempt or threats thereof." § 30-3-130, Ala. Code 1975.
The record reveals that the mother was arrested and charged with assault of the stepdaughter. The mother did not dispute that she assaulted the child. In her brief to this court, the mother basically claims that the incident was the father's fault. Apparently, the mother and the stepdaughter got into a physical struggle over some pictures the father had left in the marital home after the parties' separation. During this time the father was residing in the parties' nearby guest house. The daughter attempted to take the pictures, and the mother objected. An argument ensued and the mother ordered the stepdaughter to leave the house. From the stepdaughter's testimony, it appears that the mother attempted to physically remove her from the house and, in the attempt, hit her. The mother then went to the guest house and, according to the father's testimony, told the father to "get that bitch out of my house." The mother struck the father several times and the daughter telephoned the police. The mother was arrested. The parties' child was present during the incident. We add that the stepdaughter was 14 years old when the incident occurred. The stepdaughter had not seen her biological mother since she was 5 years old and had lived with the father and mother since she was 5 years old.
Reviewing the record, we find undisputed evidence that the mother struck the stepdaughter and that this was an incident of assault, defined in § 13A-6-20 through -25. Therefore, there is a rebuttable presumption that it is detrimental to the child and not in the best interest of the child for the mother to have sole custody, joint legal custody, or joint physical custody. In addition, § 30-3-131 requires the court to take into account the effect the domestic violence has had on the child. There is no indication from the trial court's judgment that it considered § 30-3-131. Because we find undisputed evidence of assault, we reverse that portion of the judgment awarding custody of the child to the mother and remand the case for the trial court to determine whether the mother rebutted the presumptions established by § 30-3-131 and -133. See Jackson v. Jackson,709 So.2d 46 (Ala.Civ.App. 1997).
The parties' requests for attorney fees are denied.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.