This case involves the custody of the two minor children of Carol van Elkan (formerly Carol Couch) and William F. Couch. The Court of Civil Appeals affirmed the trial court's order giving the father custody of the two minor children, whose ages are six and eight, 521 So.2d 985 (Ala.Civ.App. 1987). The mother's application for rehearing was overruled, and we granted her petition for certiorari; we affirm.
The final judgment divorcing the parents was entered in November 1984. Incorporated into the divorce judgment was a separation agreement giving the parents joint legal and shared physical custody of the *Page 988 
children. Following the divorce, the parents, who lived only one-half mile apart, changed physical custody of the children each week. Thus, the children lived with their mother one week and their father the next week.
The parents followed this arrangement for two to three months and they then agreed between themselves that it would be better for the children to live primarily at one home, with the other parent having liberal visitation rights. Because the father was working long hours in the family business, including nights and weekends, and the mother was not working at all, the parties agreed that the children would live with their mother.
Regarding his reasons for entering into this arrangement, Mr. Couch testified:
 [I] tried to do what we thought was in the best interest of the children and allow them to live in one place and a lot of visitation with me more than every other weekend. . . .
 I felt it was in the best interest of the children at that time since I was working more, and she was not working.
The mother's testimony was consistent. She testified:
 Bill and I both agreed that it was not good for the children to be back and forth every other week. Bill also stated to me that it was too hard on him to have the children every other week. That he could not get up and prepare to go to work, fix their lunches, and get them ready for school and take them to school and be at work on time. It was too hard.
The court's judgment was never formally modified, but the parents maintained that informal arrangement from approximately January or February 1985, through March 1986, when the mother decided to marry Eric van Elkan and move to New York. She intended to take the children with her to New York, but Mr. Couch obtained a temporary restraining order to prevent her from taking the children out of Alabama.
Subsequently, the mother moved to dissolve the TRO and to modify the custody provisions of the divorce judgment to give her full custody of the children, provide reasonable visitation for the father, and to increase child support payments.
Mr. Couch then made an oral motion requesting physical custody of the children. Following an evidentiary hearing on the motions, the court gave the father physical custody, while maintaining joint legal custody. The court's order stated:
 4. The Court cannot conclude from the evidence that the children are likely to suffer any irreparable or significant emotional trauma if placed in the primary care of either party. While there is evidence that the children are "closer" to the Plaintiff, that they have a good relationship with Plaintiff's husband, and that children "generally" fare better in a two-parent home, there is ample evidence that they have a close relationship with the Defendant, and no evidence that they would not fare well in the care of the Defendant.
 5. The families of all parties concerned, including Plaintiff's husband, reside in the Calhoun County area. In the opinion of the Court, it is more realistic to expect that the Plaintiff and her husband will be able to maintain a closer relationship with the children through their contacts and visits with their families than would the Defendant if the children reside in New York.
 6. The evidence does not show that it would materially promote the best interest of the parties' minor children to grant the full care, custody, and control of said children to either Plaintiff or Defendant.
 Therefore, the Court being of the opinion that the best interest of the parties' minor children
would be served by placing their primary care with the Defendant. . . .
(Emphasis supplied.)
Mrs. van Elkan's motions regarding visitation and child support were thus denied. No application for stay was made; therefore, the children have been living with their father since September 1986, pursuant to the trial court's order.
The Court of Civil Appeals affirmed that order. Mrs. van Elkan petitioned for certiorari *Page 989 
on the ground that the trial court had applied the wrong standard for determining whether the father should obtain custody of the children.
There are two different standards for reviewing custody arrangements. If custody has not previously been determined, then the appropriate standard is "the best interest of the children." See Murphy v. Murphy, 479 So.2d 1261 (Ala.Civ.App. 1985); Ex parte Berryhill, 410 So.2d 416 (Ala. 1982). However, if there is a judgment granting custody to one parent, or if one parent has "given up" legal custody, then custody will bechanged only if it would "materially promote" the children's welfare. Ex parte McLendon, 455 So.2d 863 (Ala. 1984).
In McLendon, a judgment awarded custody of the divorced parents' infant child to the paternal grandparents. Approximately five years later, after the mother had remarried and had another child, she attempted to regain legal and physical custody of her first child. The court held that the appropriate standard was whether a "change" in custody would materially promote the welfare of the child. Because there were equal advantages and disadvantages to living with either the mother or the grandparents, the court held that moving the child would not materially promote the welfare of the child; therefore, custody remained with the grandparents. The reason for the stricter standard after custody has been determined once, is that uprooting children and moving them can be traumatic. Therefore, the benefit of moving the children must outweigh the potential harm. McLendon, supra.
When a court makes an initial determination of custody, each parent has an equal right to try to gain custody of the children. Custody of the children is no longer routinely given to the mother and, in fact, courts now will often permit arrangements that allow both parents to participate in raising their children. In this particular case, partially because the parents lived in the same city and within the same school system, the court granted shared physical custody of the children in its initial determination of custody. When the mother decided to remarry and move to New York, the circumstances were such that it was no longer possible to have shared physical custody. Thus, custody of the children had to be determined for a second time.
This Court has never been confronted with this particular situation, and we must now determine what standard should have been applied to determine the primary physical custodian of the children. Mrs. van Elkan claims that Mr. Couch "gave up" his legal right to shared physical custody when he agreed to allow the children to live primarily with her; therefore, she says, the "materially promote" standard should have been applied because custody was being changed. We disagree, and we conclude that McLendon, supra, does not apply to the facts of this case and that the policy considerations raised by the Court inMcLendon are not relevant to the facts of the instant case; therefore, custody was appropriately determined by the trial court according to what was in the "best interest" of the children.
The original separation agreement gave the parents joint legal and shared physical custody of the children; however, the parties admitted that after the first two to three months the mother was the primary custodian and the father visited and kept the children on some weekends and holidays. But, at the time the parties agreed that the children would live primarily with the mother, the circumstances were substantially different from what they are now. First, the parents lived only one-half mile apart at the time of the divorce judgment and their subsequent arrangement. Now, the mother has remarried and moved to New York. Second, the mother was not working at all. On the weeks that she did not have the children, she had no other substantial obligations. On the other hand, at that same time, the father was working a lot of overtime in the family business and he did not feel capable of handling the children every other week, especially considering the fact that the mother was not working at all. Now, Mr. Couch does not work substantial overtime except during *Page 990 
the holidays, and he has worked out a system with his family for the care of the children. Under the earlier circumstances, allowing the mother to have the primary care of the children worked to the benefit of all the parties. But, when Mrs. van Elkan tried to move the children to New York, Mr. Couch reasserted his rights to shared physical custody under the terms of the separation agreement.
This Court held in McLendon, supra, that when a parent has "given up" legal custody, the "materially promote" standard applies. However, that case involved a judgment whereby the mother had voluntarily given legal and physical custody to her mother-in-law. In this case, Mr. Couch never formally "gave up" anything. He merely acted in a way that was inconsistent with the judgment. We would be discouraging rational, reasoned, decisions by divorced parents regarding the welfare of their children if we concluded that Mr. Couch waived his legal right to shared physical custody by allowing the mother to have the primary care of the children. The arrangement giving primary physical custody of the children to their mother apparently worked well until she wanted to move out of the state and take the children with her. Up to that point, because the parties agreed about what should be done with the children, they probably saw no need for a modification of the custody provisions. When the parties did have a disagreement, they petitioned the court to modify the divorce judgment.
If Mr. Couch had known that he might lose his right to shared physical custody of the children by letting the mother have the primary care of the children, he might have refused to allow the children to live with her, even though it was to the benefit of all the parties at that particular time. We decline to discourage amicable arrangements by holding that Mr. Couch's actions constituted a waiver of his rights pursuant to the judicially approved separation agreement.
Another issue arises from the fact that although the judgment provided for shared physical custody, the parents, because it was better for all parties at the time, did not follow the judgment but made the mother the primary custodian. Although on paper the parties are equal, in practice, they are not equal. The children lived at their mother's home for over a year. Moving the children to their father's home required the children to be "uprooted," at least to some extent. Thus, the policy considerations of McLendon, supra — the trauma of uprooting the children and the resulting benefits of the move — might still have been valid considerations for the trial court.
But the facts of this particular case make the situation even more unusual. The children would have been "uprooted" even if they had stayed with their mother. They would have had to move from Alabama to New York, thus changing schools, churches, and activities, and they would also have had to adjust to a stepfather. On the other hand, by being placed with their father, they were "uprooted" in the sense that they moved in with their father, but they did not have the problems of adjusting to a new city, school, and church, to new activities, and to a stepparent. Because the children would have been moved and affected in either situation, the parents are once again in basically equal positions as regards the policy considerations of McLendon. Considering the fact that the divorce judgment gave the parents equal rights, the only fair thing to do was to consider custody as if it had never previously been determined — applying the "best interest" standard.
After considering these factors, we conclude that Mr. Couch did not give up his right to shared physical custody of the children when he allowed the children to live with their mother. Furthermore, because the other factors involved in this case placed Mr. Couch and Mrs. van Elkan in similar positions in relation to what would benefit the children, we conclude that the trial court correctly applied the "best interest" test to determine custody.
The trial court had an opportunity to personally evaluate Mr. Couch and Mrs. van Elkan, as well as the children. Furthermore, *Page 991 
the trial court considered the testimony of an expert witness for each party. There is sufficient evidence in the record to support the trial court's modification order awarding primary physical custody of the children to their father.
For the foregoing reasons, the judgment of the Court of Civil Appeals is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES, BEATTY and STEAGALL, JJ., concur.