Richard L. Watters ("the father") and Jennifer L. Watters ("the mother") were divorced in March 2002. They agreed to share joint custody of their son; their agreement, which provided that the parties each have custody for approximately four and a half months during the school year and alternating two-week periods during *Page 914 
the summer months, was incorporated into the judgment of divorce. The agreement regarding custody, however, was never truly followed; in August 2002, the parties agreed to continue a week-to-week custody swap, which they had been doing during the preceding summer months. In December 2002, the mother filed a petition to modify custody in which she sought sole physical custody of the parties' son.[1] The father answered the mother's petition and counterclaimed for sole physical custody.[2]
The trial on the modification petition was not held until January 2004. The testimony at trial revealed that the mother, who is 32 years old, had remarried in July 2003; her new husband, Ray Herold, is retired. The mother quit her former employment, and she and Herold plan to live on his retirement income of $70,000 per year. The father, who is 48 years old, is an attorney in solo practice. He estimated his income, after expenses associated with his practice, to be approximately $2,000 per month. He further testified that he has some outstanding tax liability to the federal government.
The child attends first grade at John Will Elementary School. His teacher, Michelle Burden, testified that she was aware that the parents alternated custody of the child on a weekly basis. She said that she had noticed that the child's conduct was better when he was with the father. Although the child's behavior problems were fairly mild, Burden did comment that the child was less likely to listen to and follow instructions and often wanted to "talk back" to her during the weeks he was with his mother. In addition, Burden testified that the child had been tardy to school 12 times between August 2003 and January 2004; she said that 11 of those 12 tardies occurred when the child was in the custody of his mother. Burden also testified regarding the child's enrollment in speech therapy; she said that the father had instigated the process of testing the child because he was concerned about the child's speech. Burden said that the father was involved in the child's schooling, commenting that she sees him more than she sees other parents. Burden also said that the father attended PTA meetings and other school-related activities like "Math Night," but Burden noted that she had not seen the mother at those activities.
The father testified that he and the child have a close relationship. The father testified that he and the child participate in several activities together, including attending church, going fishing, going to the beach, and participating in school field trips. Although the child is in an after-school program from 3:00 p.m. until approximately 5:30 p.m. on a typical day when in the custody of the father, the father explained that the child was supervised by adults, was with children his own age, and was provided activities to participate in during that time. Thus, the father testified that he felt that the after-school care was good for the child even though, if the child were in the mother's custody, he would not be required to attend after-school care. The father criticized the mother for not being involved with the child; he accused her of putting the child in front of the computer or video games or leaving him with her new husband instead of engaging in activities with the child. The father also presented the testimony of *Page 915 
several other witnesses, all of whom testified that he was a good father.
Regarding the child's enrollment in speech therapy, the father explained that the child had had a noticeable speech problem that the father at first thought might have resulted from a tonsillectomy performed on the child. According to the father, he spoke with Burden about whether she had noticed any speech problems. After Burden concurred with the father about the child's speech problems, the father sought out speech therapy for the child through the elementary school. The father said that the mother had been resistant to the idea of speech therapy and that the mother had communicated having some concern about its cost. The father also commented that the mother had not attended any of the "team meetings" regarding the child's speech therapy.
The mother testified that she thought that the week-to-week custody arrangement was disruptive and that the child needed more stability in his life. She said that she had noticed behavior problems with the child but did not specifically state what those problems were. She further testified that the week-to-week arrangement had not worked, again without giving any more specific explanation. According to the mother, if she were awarded custody the child would not have to be placed in after-school care, she would be able to spend more time with the child, and she would be able to be more involved in his school activities. She admitted that the father was a good father and that she had no negative comments to make about his parenting abilities. She stated, however, that she could better rear the child, primarily because she no longer works outside the home.
When questioned about her reluctance to have the child enrolled in speech therapy, the mother said that she originally did not think that the child needed speech therapy. However, she further explained that she had thought that speech therapy was not necessary at the time the father broached the subject because the child's tonsils had been taken out only a few weeks before. The mother testified that she had not attended the "team meetings" because she had not received notice of the meetings.
The mother also said that she had attempted to work with the child in relation to his obedience to the rules at school. Although the mother admitted that the child had been tardy a few times, she denied that the child had been tardy 11 times while in her custody. She testified that she did attend activities at the school when she was given notice.
The mother presented the testimony of John Davis, Ph.D., a clinical psychologist. Based upon his experience as a psychologist, Dr. Davis testified that, in his opinion and experience, joint physical custody is simply not in the best interest of any child because children need stability. Dr. Davis's testimony reflected that he would also find joint legal custody not to be in the best of interest of any child because, in his opinion, only one person should be in control of making decisions regarding a child's medical, educational, and social needs. Dr. Davis said that he had interviewed the child only one time, in what he described as "not an in-depth comprehensive evaluation," and he commented that he saw "no indications of any major issues" with the child.
The trial court's judgment indicates that it found the parties' failure to abide by the terms of the divorce judgment to constitute a material change of circumstances. The judgment awarded the mother sole physical custody of the child without stating the reasons for that decision. The father appeals, arguing that the mother failed to prove a material change in circumstances affecting the child so as to *Page 916 
warrant a change of custody. He also argues that, if we determine that the mother did prove a material change in circumstances, the evidence fails to establish that the mother should have been awarded sole physical custody.
Because the parties had joint custody, the standard established in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), does not apply to the mother's modification petition in the present case. SeeEx parte Couch, 521 So.2d 987 (Ala. 1988) (holding that the best-interest standard applies to the modification of an existing joint-custody arrangement). However, although the material-promotion standard of Ex parte McLendon does not apply, the mother "was required to prove that `a change in circumstances has occurred such that it was in the [child's] best interests that the [judgment] be modified to transfer [sole] physical custody.'" C.J.L. v. M.W.B., 879 So.2d 1169, 1179
(Ala.Civ.App. 2003) (quoting Means v. Means, 512 So.2d 1386,1388 (Ala.Civ.App. 1987)).
The father, in the argument section of his brief to this court, mentions that the mother offered no evidence that the father's actions or the custody arrangement had had an adverse impact on the child. Although some older custody cases indicated that an adverse impact on a child must be shown before a parent would be entitled to a change of custody, see, e.g., Lewis v. Douglass,440 So.2d 1073 (Ala.Civ.App. 1983), overruled by Ex parteMcLendon, 455 So.2d at 866, and Simpson v. Gibson,420 So.2d 782 (Ala.Civ.App. 1982), overruled by Ex parte McLendon,455 So.2d at 866, our supreme court has, on more than one occasion, clearly stated that custody modifications do not require proof of a material change of circumstances that has adversely or detrimentally impacted the child. See Ex parte Murphy,670 So.2d 51, 53 (Ala. 1995); Ex parte McLendon, 455 So.2d at 866; and Ford v. Ford, 293 Ala. 743, 744, 310 So.2d 234, 235 (1975) (correcting a statement of the law from an opinion of the Court of Civil Appeals regarding custody modifications by omitting the word "adversely"). Instead, the party seeking the modification of custody must prove "a material change of circumstances of the parties since the prior [judgment], which change of circumstances is such as to affect the welfare and best interest of the child or children involved." Ponder v. Ponder, 50 Ala.App. 27, 30,276 So.2d 613, 615 (Civ.App. 1973).
Based on our review of the record, we agree with the father that the mother failed to prove a material change in circumstances affecting the best interest and welfare of the child such that a change in the existing custodial arrangement was warranted. Changes in the circumstances of the mother have indeed occurred: she has remarried, albeit approximately six months after she filed her modification petition; she is no longer employed; and she is now residing in a large house in a nice residential neighborhood. However, the testimony at trial did not establish that those changes affected the child in anything more than a tangential way.
The mother's expert, Dr. Davis, did testify that joint custody, in his opinion, is not in a child's best interest. Dr. Davis's testimony sheds no light on how the parties' joint-custody arrangement was affecting the child or on whether any changes in the parties' circumstances have affected the child. As noted above, Dr. Davis did not offer any specific testimony regarding whether the joint-custody arrangement in the present case was or was not in the best interest of this particular child. Because our legislature has indicated that joint-custody arrangements are favored, Ala. Code 1975, § 30-3-150, and should be considered in every child-custody case, Ala. Code 1975, § 30-3-152(a), Dr. Davis's wholesale rejection of joint custody contradicts *Page 917 
the stated policy of this state. Thus, his testimony is insufficient to establish either a material change in circumstances warranting a change of custody or that a change from the parties' joint-custody arrangement would be in the best interest of this child.
In addition, the trial court's conclusion that the parties' decision to rework their joint-custody arrangement was in and of itself a material change in circumstances is an incorrect application of the law. Both our supreme court and this court have held that agreed-upon changes to a custody arrangement cannot be considered to be a relinquishment of a parties' rights under the previous custody judgment. See, e.g., Ex parte Couch,521 So.2d at 990; P.A.T. v. K.T.G., 749 So.2d 454, 458
(Ala.Civ.App. 1999); and Curl v. Curl, 526 So.2d 26
(Ala.Civ.App. 1988). Although those cases address which standard — best interest or material promotion — applies to the review of a custody modification, they support the right of the parties to a custody judgment to attempt to make agreements that they feel would serve the best interest of the children that are the subjects of those custody judgments. The parties in the present case agreed shortly after the entry of the divorce judgment, and they continue to agree even now, that the custody arrangement that was incorporated into the divorce judgment would not serve the best interest of the child. We cannot agree that the law allows the parties' informal agreement to alter the manner in which their joint-custody arrangement was effectuated to serve as the basis for the mother's seeking a modification based solely on her unexplained dissatisfaction with that joint-custody arrangement. To do so would undercut our supreme court's pronouncement that we are to encourage parents to work together for the benefit of the family, see Ex parte Couch,521 So.2d at 990, and the requirement that a party seeking a modification of custody prove a material change of circumstances affecting the best interest and welfare of the child that warrants a modification of custody. Ponder, 50 Ala.App. at 30,276 So.2d at 615.
The child appears, based on all the evidence of record,[3] to be happy and well-adjusted. The changes in his mother's life have existed since July 2003. No evidence reveals that those changes, although positive in nature, have affected the welfare and best interest of the child to such an extent that a change in custody is warranted.
Because we have concluded that there exists no material change of circumstances warranting a change of custody in the present case, we pretermit consideration of the father's arguments concerning whether the evidence supports an award of sole custody to the mother and we deny his alternative request that, if we were to find a change in circumstances had been proven, sole custody be awarded to him based on the evidence at trial.
The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] The mother's petition also requested child support and other relief not pertinent to this appeal.
[2] The father also sought an order finding the mother in contempt of certain provisions of the divorce judgment not pertinent to this appeal.
[3] The father filed a postjudgment motion to which he appended the affidavits of Dr. Daniel Koch, the child's therapist, and Dr. Robert Mendel, the child's dentist. The mother moved the trial court to strike those affidavits, which the trial court did. We, therefore, have not considered those affidavits in our review of this case. *Page 918