THOMAS, Judge.
Robert Kilgore, Jr. (“the father”), appeals from a judgment of the Limestone Circuit Court granting the counterpetition for a modification of custody filed by Kimberly P. Kilgore (“the mother”) and awarding the mother sole physical custody of the parties’ daughter (“the child”).
The parties were divorced in November 2009. Pursuant to a settlement agreement entered into by the parties, the divorce judgment awarded the parties joint physical and legal custody of the child, with the parties alternating physical custody weekly on a Wednesday to Wednesday schedule. On June 27, 2010, the father filed a motion for contempt and a petition for a modification of custody seeking sole physical custody of the child and alleging that the mother had been entertaining overnight visitors of the opposite sex that she had met on the Internet. The father filed a motion for pendente lite custody of the child on September 27, 2010, which the trial court granted on October 29, 2010.[1]
On November 2, 2010, the mother answered the father’s petition for a modification of custody and the motion for contempt and counterpetitioned for a modification of custody, seeking sole physical custody of the child and child support. In her counterpetition, the mother alleged that she had become primarily responsible for the child’s care because, she said, the father’s work schedule required him to deliver the child to her house several mornings per week during his custodial periods, which, she asserted, was interfering with the child’s “emotional well being and her ability to benefit from school.” Additionally, that same day, the mother filed a motion to set aside the pendente lite custody award of the child to the father, because, she said, she had not been served with notice of the pendente lite hearing. The trial court initially denied the mother’s motion to set aside the pendente lite custody award on November 8, 2010; however, on December 1, 2010, after conducting a hearing on the mother’s motion to set aside the penden-te lite custody order, the trial court set aside that order.
*547 The trial court conducted an ore tenus hearing regarding the parties’ petitions for modification of custody and the father’s motion for contempt. The mother testified that the father lived in Ardmore, Tennessee, in a home about two-and-a-half to three miles from her residence and that, during his custodial periods, he had been delivering the child to her home around 4 a.m. two to three days per week since the divorce in November 2009. The mother further testified that the father had stopped delivering the child to her home in the early morning hours since he had had his brother and subsequently his mother (“the paternal grandmother”) move into his residence to assist with the child during his weekly custodial periods. The mother testified that she did not care for the paternal grandmother because, she said, she had witnessed the paternal grandmother “scream” at her other grandchild and that the father had stated to her during the parties’ marriage that the paternal grandmother took pills. She further testified that she did not want the child around the paternal grandmother, but she did not state any specific reason why the paternal grandmother would not be an adequate caretaker for the child.
The mother testified that she had not had overnight visitors during the time the child was in her custody. She further testified that Stacy Cooper, her current boyfriend, had a good relationship with the child. Cooper testified that the he had never stayed overnight at the mother’s house when the child was present and that the child and the mother had never stayed overnight at his residence. Tony Culber-son, a private investigator, testified that the father had hired him and that, during his six-month investigation, he had not witnessed any overnight visitors at the mother’s residence.
The father testified that he had been employed at a plant in Decatur for 10 or 11 years and that he worked 40 hours per week and roughly 60 or 70 hours per week during “shutdowns,” which, he said, occur about 4 weeks per year. He testified that, during his custodial periods, he had delivered the child to the mother’s house two to three days per week in the early morning hours before having his brother and then the paternal grandmother move into his residence to assist him in caring for the child. The father testified that the one-week joint-physical-custody arrangement generally works but that “[bjecause of holidays and other issues, [the parties] have to work around things to make it work for both [parties].”
The paternal grandmother testified that she had a good relationship with the child, although, she said, she had just become “close” with the child in the time since she had moved into the father’s home. She testified that the child is “a little quiet” after returning to the father’s home after an exchange of custody.
The only additional witness to testify was Jaquata Thompson, the child’s preschool teacher. She testified that she knew the mother and the father and that she had had equal contact with the parties.
On May 25, 2011, the trial court entered a judgment finding that a change in circumstances had occurred, awarding the mother sole physical custody of the child, awarding the father visitation, and denying the father’s motion for contempt. In its judgment, the trial court awarded the mother monthly child support in the amount of $597.
The mother filed a postjudgment motion styled as a “Motion to Reconsider Child Support” on June 22, 2011. On June 27, 2011, the father filed a motion asking the trial court to alter, amend, or vacate its judgment. In response to the father’s *548 postjudgment motion, the mother filed a motion to dismiss the motion as untimely. The father’s postjudgment motion was untimely because his motion was filed more than 30 days from the entry of the final judgment. See Rule 59(e), Ala. R. Civ. P. Subsequently, the father filed a timely notice of appeal to this court on July 6, 2011. The mother’s postjudgment motion was denied by operation of law on September 20, 2011, see Rule 59.1, Ala. R. Civ. P., and the father’s notice of appeal, which had been held in abeyance pending a ruling on the mother’s postjudgment motion, became effective on that date. See Rule 4(a)(5), Ala. R.App. P.[2]
We review the father’s claim that the trial court erred in finding a change in circumstances and modifying custody of the child after hearing ore tenus testimony under the following standard of review. “‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005) (quoting Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility.” Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
‘““[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” ’ Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d [1322] at 1326 [ (Ala.1996) ]). ‘Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court’s judgment.’ Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007) (citing Ex parte Patro-nas ) (emphasis added). Under the ore tenus rule, where the conclusion of the trial court is so opposed to the weight of the evidence that the variable factors of a witness’s demeanor and credibility and the inferences that can be drawn from the evidence, even after considering those factors, ‘ “ ‘could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed.’ ” ’ Cheek, 1 So.3d at 1029 (quoting B.J.N. v. P.D., 742 So.2d 1270, 1274 (Ala.Civ.App.1999), quoting in turn Jacoby v. Bell, 370 So.2d 278, 280 (Ala.1979) (emphasis added)).”
Ex parte Blackstock, 47 So.3d 801, 805-06 (Ala.2009).
On appeal, the father argues that the trial court erred in determining that there had been a material change in circumstances affecting the best interests of the child since the time of the divorce such that it was in the child’s best interest to award the mother sole physical custody because, he says, the mother failed to present evidence indicating a material change in circumstances. In essence, the father challenges the sufficiency of the evidence.
It is well settled that
*549 “[w]here, as in the present case, there is a prior judgment awarding joint physical custody, ‘ “the best interests of the child’” standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala.1988)). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ‘ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)).”
Ex parte Blackstock, 47 So.3d at 804-05.
In the present case, the trial court determined that there had been a material change in circumstances. Specifically, the judgment states, in pertinent part:
“The child is now six years of age and is experiencing some difficulties with regard to the shared custody whereby the parties exchange the child week to week to accomplish the Orders herein.
[[Image here]]
“It is ORDERED by the Court that the best interests of the parties’ minor child is hereby determined to be joint legal custody awarded to the parties hereto, and sole physical custody of said minor child is awarded to the [mother].”
Our review of the record convinces us that the father’s contention that the mother faded to establish that there had been a material change in circumstances affecting the best interests of the child is correct. The only evidence presented at trial that supports the trial court’s finding that there had been a material change in circumstances because the child is “experiencing difficulties” with the joint-physical-custody arrangement was the mother’s and the paternal grandmother’s testimony that the child was “quiet” after the weekly custody exchanges. Neither the mother nor the paternal grandmother testified that the child had any other issues regarding the parties’ exercising joint physical custody, and neither expounded on why the child’s “quiet” demeanor was unusual. More specifically, in response to questioning whether the weekly custody exchanges were “hard” on the child, the mother testified:
“I think it’s hard on her. I think she enjoys being with [the father] and being with me, but I do think that — I mean, it would be hard on me. And she’s six. And I mean, just the workings of her little brain, I guess she just doesn’t understand the — you know, the why behind everything because she’s six.
“And so, she just does. She just, you know, knows that me and daddy have to share her and this is the way things are. But I do think, you know, it just takes— I’m sure she has to get readjusted to [the father’s] house the same way she gets readjusted to my house. Whenever she comes from his house, you know, she’s quiet, like she had testified earlier to. That, you know, if you ask, you know, what did you do at [the father’s] house she’s just kind of quiet and, you know, like she doesn’t want to talk about it. So I don’t press her.”
The mother’s testimony is speculative at best. Further, the mere mention of behavior such as being “quiet” after a custody exchange and having to readjust to each parent’s house, which are natural occurrences following a divorce, without more specific explanation does not indicate that the arrangement is disruptive or that the child is “having difficulties.”
*550 In Watters v. Watters, 918 So.2d 913 (Ala.Civ.App.2005), this court reversed a judgment of the trial court by determining that the evidence failed to indicate that there had been a material change in circumstances warranting a change in the parties’ mutually agreed upon joint custodial arrangement. In Watters, the mother testified that she thought the week-to-week custody arrangement was disruptive to the child and that she had noticed behavioral problems in the child since the divorce, but the mother failed to specifically state what behavioral issues the child had been exhibiting. Id. at 915.
Like the mother in Watters, the mother in this case failed to specifically state any reason why the agreed-upon joint-custody agreement was disruptive and testified only generally that the joint-physical-custody arrangement was “hard on the child” and that the child was “quiet” and had to “readjust” after the exchanges. Moreover, in her counterpetition for a modification of custody, the mother alleged that there had been a change in circumstances because the father had been delivering the child to the mother’s house in the early morning hours, which, she contended, was interfering with the child’s “emotional well being and her ability to benefit from school.” However, the mother and the father testified that the father had ceased delivering the child to the mother’s house months before the hearing. Additionally, the record is devoid of any evidence indicating that the custody exchanges were affecting the child’s well-being. Thus, we conclude that the mother failed to meet her burden of proving that a change in circumstances affecting the child’s best interests had occurred since the time of the divorce sufficient to warrant a modification of custody in this case. Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987).
In her appellate brief, the mother contends that this court cannot reverse the judgment of the trial court because, she says, the father invited any error by the trial court in modifying custody by initiating the proceedings by filing a petition for a modification of custody “conceding that the joint custody arrangement was not working.” This argument is without merit. The father’s petition for a modification of custody alleged that, during her custodial periods, the mother had been entertaining overnight visitors of the opposite sex whom she had met on the Internet. The evidence presented at the hearing did not support the father’s contention, and, thus, the fact that the father had filed a petition for a modification of custody on a completely separate ground than the grounds asserted in the mother’s counterpetition cannot be considered a basis for holding that the father’s actions invited any error.
Additionally, in her appellate brief the mother argues that there has been a material change in circumstances as a matter of law because, she says, the father relocated to the State of Tennessee after the entry of the divorce judgment. We note that the mother is correct in stating that, pursuant to § 30-3-169.4, Ala. Code 1975, “a change in the principal residence of the child is ‘presumed not to be in the best interest of [the] child [and] is necessarily a material change’ when that relocation is to a location that is more than 60 miles away or across state lines.” McElheny v. Peplinski, 66 So.3d 274, 281 (Ala.Civ.App.2010) (quoting Marsh v. Smith, 37 So.3d 174, 178 (Ala.Civ.App.2009)). However, the mother failed to present evidence to the trial court indicating, that the father had relocated to Tennessee. The evidence indicated only that the father resided in Tennessee at the time of the hearing; the record contains no testimony establishing that the father had *551 moved to Tennessee after the entry of the divorce judgment, and the only testimony presented regarding any move by either party established that the mother had moved two times since the entry of the divorce judgment. Because the mother failed to present evidence indicating that the father had relocated since the entry of the divorce judgment, we cannot consider the father’s alleged relocation to Tennessee as a ground supporting the trial court’s finding that a material change in circumstances had occurred since the time of the parties’ divorce.
Accordingly, because we conclude that the mother failed to present evidence indicating that “a change in circumstances ha[d] occurred such that it was in the child’s best interests that the [judgment] be modified to transfer [sole] physical custody,” Means, 512 So.2d at 1388, we reverse the judgment of the trial court granting the mother’s counterpetition for a modification of custody and awarding the mother sole physical custody of the child, and we remand this cause to the trial court for entry of a judgment consistent with this opinion.
We deny both the mother’s and the father’s request for an award of attorney fees on appeal.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The mother failed to answer the father’s motion for pendente lite custody of the child or to appear at the pendente lite hearing.

. The record indicates that on July 8, 2011, the trial court set a hearing regarding the mother’s postjudgment motion for July 22, 2011. However, the record does not contain any order ruling on the postjudgment motion; thus, we conclude that the trial court failed to rule on that motion and that it was denied by operation of law. The record indicates that the father filed an "amended notice of appeal” on July 28, 2011. That notice of appeal was merely duplicative because the father’s July 6, 2011, notice of appeal, which was timely, was held in abeyance under Rule 4(a)(5).