On Application for Rehearing
THOMPSON, Presiding Judge.
The opinion of May 4, 2012, is withdrawn, and the following is substituted therefor.
D.M.J. (“the mother”) appeals from a custody-modification judgment of the De-Kalb Circuit Court that awarded D.N.J. (“the father”) sole physical custody of the parties’ child (“the child”) and ordered the mother to make monthly child-support payments to the father in the amount of $156.40.
The parties divorced on November 2, 2006. One child was born of their marriage. The child was in the third grade at the time of the trial in this action. By an agreement that was incorporated into the divorce judgment (“the 2006 child-custody agreement”), the mother and the father exercised joint custody of the child, with the father making monthly child-support payments to the mother in the amount of $269. Following the entry of the November 2, 2006, judgment, the parties amicably alternated physical custody of the child every three days or every seven days, and the father made every child-support payment that was due.
It appears that on June 28, 2007, the trial court entered a judgment modifying the divorce judgment (“the 2007 modification judgment”) to provide, among other things, that the mother and the father were each to submit to a drug test upon the request of the other party. The pleadings, orders, and other documents relative to the divorce action and the 2007 modification proceeding are not included in the record of the present appeal.
On June 29, 2010, the State of Alabama (hereinafter “the State”), on behalf of the mother, filed an action against the father in which it sought an increase in the father’s child-support obligation on the basis that his income had increased. On October 20, 2010, the father filed an answer and a counterclaim in which he alleged there had been a material change in circumstances such that he should be awarded sole custody of the child. He also asked the trial court to enter an order requiring the mother to pay child support to him and to enter an order prohibiting the mother from having “overnight visitors of the opposite sex to whom she is not related or married in the presence of [the child].”
The trial court held a bench trial on April 19, 2011, at which it received ore tenus evidence. The mother testified that she is a hairdresser. Although the testimony is not entirely clear, it appears from the mother’s testimony that, when the 2007 modification judgment was entered, she was living in an apartment in Rains-ville. After the entry of that judgment, she moved out of that apartment and moved in with a friend and the friend’s minor son in Dutton. She then moved with that friend and the friend’s minor son to a house in Scottsboro. At some point, she became romantically involved with her *395 friend’s minor son and began living with the minor son in a house in Fyffe that the minor son was using while he took care of chickens.[1] Later, the mother moved into an apartment with the Mend’s minor son, and, when the minor son was 17 years old, she and the friend’s minor son married. That marriage appears to have lasted approximately three months.
In January 2009, after she divorced from her friend’s minor son, the mother moved into a rental house where she remained until November 2010. During that approximately 23-month period, she had one live-in boyfriend for approximately four months and a second live-in boyfriend for more than a year. The mother testified that her landlord notified her that he had sold the house she was renting, and, therefore, in November 2010, the mother moved in with her father while a house she intended to rent from him was renovated. In January 2011, she moved into her father’s rental house, where she was living at the time of the trial in April 2011. At the time of the trial, she had a different boyfriend with whom she had been in a relationship for four months; that boyfriend was not living with the mother. The mother admitted that her constant moves were not good for the child.
The father testified that he worked for a telephone company and that he had worked for that company for the last 16 or 17 years. The father’s testimony reflects that he married his present wife, who is a college professor, on June 8, 2007. His testimony indicated that, since the 2007 modification, he and his wife had moved one time — from the mobile home in which he and his wife had lived while they were building a house to the house that they built.
When it was pointed out to the father that he did not raise with the court his concerns relative to the mother until he filed his counterclaim in the present action three and a half years after the most recent modification, the father responded that he did not have money to come back to court “every time the mother changed boyfriends.” The father testified that he “knew” the mother would file something with the court at some point to increase his child-support obligation. The father repeatedly stated that, while he waited for that to happen, he noted the mother’s conduct so that when he returned to court, he “would have all my ducks in a row” in order to assert a custody claim. We note that, according to the child-support forms incorporated into the trial court’s judgment, the father’s annual income was $82,685, and the mother’s annual income was $15,600.
The mother testified that she requested the State’s assistance in filing the child-support action after the father withdrew the child from the private school in which the child had been enrolled for several years. The divorce judgment had provided that the father pay “all educational fees and expenses, including school lunches, clothing, extracurricular activities.” The mother acknowledged that that provision did not specifically require that the father pay private-school tuition, but she stated that the father had agreed to pay that tuition. The father admitted that he had decided he could no longer afford to send the child to private school because he and his new wife had constructed “a house that ended up being a whole lot bigger than we was expecting” and because he and his new wife had had a child together.
*396 The child testified that he liked the present custody arrangement and that he would not want to change it.
On April 21, 2011, the trial court entered a judgment in which it found that there had been a material change of circumstances and that it was in the child’s best interest that sole physical custody of the child be awarded to the father. It awarded joint legal custody of the child to the parties, sole physical custody of the child to the father, and visitation to the mother. The father remained responsible for the child’s health insurance, all other medical expenses not covered by the father’s health insurance, and for the child’s educational expenses. The mother was ordered to pay monthly child-support payments in the amount of $156.40 to the father. The judgment restricted both parties from having overnight visitors of the opposite sex to whom they are not related when the child is in their respective homes. The mother filed a postjudgment motion, which the trial court denied. The mother appeals.
In Ex parte Blackstock, 47 So.3d 801, 804-06 (Ala.2009), our supreme court set out the standard of review appropriate to the present ease.
“Where, as in the present case, there is a prior judgment awarding joint physical custody, ‘ “the best interests of the child”’ standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala.1988)). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ‘ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)).
“Also, we note the presumption of correctness accorded to a trial court’s judgment:
“‘When this Court reviews a trial court’s child-custody determination that was based upon evidence presented ore tenus, we presume the trial court’s decision is correct: “ ‘A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....’” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. “In child custody cases especially, the perception of an attentive trial judge is of great importance.” Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).’
“Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
“As this Court stated in Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996), quoted in part in Lamb [v. Lamb, 939 So.2d 918 (Ala.Civ.App.2006) ], in an ore tenus proceeding,
“ ‘[t]he trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custo *397 dy hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993), set out the well-established rule:
“““Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, ... and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.
“676 So.2d at 1324; see Lamb, 939 So.2d at 922; see also Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (‘[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.’ (citation omitted)).
“ ‘ “[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” ’ Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d at 1326). ‘Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court’s judgment.’ Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App. 2007) (citing Ex parte Patronas) (emphasis added). Under the ore tenus rule, where the conclusion of the trial court is so opposed to the weight of the evidence that the variable factors of a witness’s demeanor and credibility and the inferences that can be drawn from the evidence, even after considering those factors, ‘ “ ‘could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed.’ ” ’ Cheek, 1 So.3d at 1029 (quoting B.J.N. v. P.D., 742 So.2d 1270, 1274 (Ala.Civ.App.1999), quoting in turn Jacoby v. Bell, 370 So.2d 278, 280 (Ala. 1979) (emphasis added)).
“Further, where, as in the present case, the trial court does not make detailed written findings of fact, we ‘ “will assume that the trial court made those findings [of fact] necessary to support its judgment, unless such findings would be clearly erroneous.” ’ Ex parte Fann, 810 So.2d at 636 (quoting Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992)).”
The mother contends that the trial court erred in modifying custody because, she argues, there is no evidence of a material change in circumstances and because the child stated that he was content with the joint-physical-custody arrangement. Because we conclude that the parties shared true joint custody of the child, the trial court was required to consider whether, since the date of the last custody-modification order, there had been a material change in the circumstances of the parties such that it was in the best interests of the child to modify custody. See Ex parte Couch, 521 So.2d 987, 989-90 (Ala.1988); Morgan v. Morgan, 964 So.2d 24, 34 (Ala.Civ.App.2007). This court has stated that,
“[i]n considering the best interests of the child, the court must consider the individual facts of each case, including the following factors: the sex and age of the child; the child’s emotional, social, *398 moral, material, and educational needs; the home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, and mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child; the interpersonal relationship between the child and each parent; the effect on the child of disrupting or continuing an existing custodial status; the preference of the child; available alternatives; and any other relevant matter the evidence may disclose.”

Id.

Based on the evidence of record, we conclude that the trial court reasonably could have found a material change in circumstances such that it was in the child’s best interest to award the father sole physical custody of the child. The evidence reflects that, in less than four years, the mother had moved seven times; had cohabitated with, married, and, after three months, divorced a minor; and had multiple live-in boyfriends. Based on this evidence, the trial court was free to infer an impact on the child brought on by the mother’s lack of stability such that an award to the father of sole physical custody was in the child’s best interest. Holsombeck v. Pate, 47 Ala.App. 39, 42, 249 So.2d 861, 864 (Civ.1971).
Watters v. Watters, 918 So.2d 913 (Ala.Civ.App.2005), a case on which the mother relies, is not to the contrary. In Watters, the parties were awarded joint physical custody of their child in a divorce judgment. Later, the mother filed a petition seeking sole physical custody of the child, which the trial court granted. On appeal, this court noted that the mother’s circumstances had changed: “she ha[d] remarried ...; she [was] no longer employed; and she [was] now residing in a large house in a nice residential neighborhood.” Watters, 918 So.2d at 916. However, we concluded that there was no evidence indicating “those changes [had] affected the child in anything more than a tangential way.” Id. Thus, we reversed the trial court’s judgment.
The changes in Watters, involving a remarriage and a single move by the mother to a nicer house, pale in comparison to those at issue in the present case. There is simply no way that any type of impact, positive or negative, appropriately could have been inferred from the slight changes described in Watters. Under the circumstances in the present case, however, involving changes that go to the very heart of, and call into serious doubt, the mother’s ability to provide the child with a stable environment, the trial court was free to infer an impact on the child from the mother’s constant relocations and ever changing housemates.
The mother would have us read Watters in a broader fashion and require in every case that there be direct evidence of a serious impact on a child brought on by changed circumstances before a trial court could modify custody under the Ex parte Couch standard. This is not the law. Indeed, this court has previously held that an impact on a child by material changes can be inferred from the nature of the changes themselves. See Holsombeck, 47 AIa.App. at 42, 249 So.2d at 864. We find the drawing of such an inference to have been within the trial court’s prerogative in the present case, given that stability is plainly an important factor to be considered with regard to the best interests of a child. See Morgan, 964 So.2d at 34.[2]
*399 In her appellate briefs, the mother attempts to paint this case as one in which the trial court is depriving her of her right to carry on postdivorce romantic relationships, and she cites her constitutional rights to marry and procreate. Clearly, the evidence does not support this contention. Without reciting all the evidence, it is sufficient to note that the evidence demonstrates substantially more than that the mother dated a few men after her divorce; it demonstrates poor judgment and a substantial lack of stability in the mother’s personal relationships, a lack of stability in her housing arrangements, and a lack of stability in her living arrangements.
The mother also argues that the trial court failed to give appropriate weight to the child’s desire to keep the joint-physical-custody arrangement in place. Although we recognize, as the mother points out, that the wishes of a child who is of a sufficient age are entitled to “much weight” in deciding custody, Toler v. Toler, 947 So.2d 416, 422 (Ala.Civ.App.2006), a trial court is required to consider a number of factors, see Morgan, supra, and the child’s wishes are not dispositive, see To-ler, 947 So.2d at 422. Given the facts of this case, we cannot say that the trial court erred in concluding that the wishes of the child did not outweigh the other factors the trial court considered, such as each party’s relative stability and home life.
The mother also contends that this court should overrule or choose not to follow the supreme court’s decision in Ex parte Couch, supra, applying, instead, the rationale set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Because we are bound by supreme court precedent, see § 12-3-16, Ala.Code 1975, we find no merit in this final argument. We note that the mother, in her briefs, recognizes that this court is bound by supreme court precedent, and she notes that she has raised this argument in this court so as to preserve the argument for further appellate review.
As previously noted, the Ex parte Couch standard provides that, in a case such as the present case, the trial court, to modify custody, only need find that there has been a material change in circumstances and that a modification of custody is in the child’s best interest. Ex parte Bladcstock, 47 So.3d at 804. The evidence supports such a finding in this case. As a result, we conclude that the trial court did not err when it awarded sole physical custody of the child to the father, and the trial court’s judgment is therefore affirmed.
*400 APPLICATION GRANTED; OPINION OF MAY 4, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PITTMAN, J., concurs.
BRYAN, J., concurs specially.
THOMAS and MOORE, JJ., dissent, with writings.

. The father's testimony indicates that the mother initially told him the minor was 20 years old.

. In his dissent, Judge Moore argues that direct evidence of a detrimental effect on the *399 child by material changes in circumstances must be shown. Our supreme court has limited such a requirement to cases in which a change of custody is sought based solely on heterosexual misconduct by a parent. See Ex parte 730 So.2d 1190, 1194 (Ala.1998). Although the evidence supports a finding of indiscreet conduct by the mother, we do not affirm the change of custody in this case solely on the basis of "heterosexual misconduct” by the mother but, rather, on the totality of the evidence presented, including, most importantly, the mother’s pervasive and ongoing lack of stability and her constantly changing residential arrangements. Moreover, we note that the cases on which Judge Moore relies in support of his argument, Rey v. Rey, 513 So.2d 1 (Ala.Civ.App.1986), and Judah v. Gilmore, 804 So.2d 1092 (Ala.Civ.App.2000), involve situations that are so entirely distinguishable from the facts in this case as to provide no real basis for the adoption of the broader proposition asserted by Judge Moore. Rey involved nothing more than a single move by a custodial parent; Judah involved nothing more than a single, temporary move by a custodial parent. Furthermore, both of those cases were decided under the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), applicable to prior custody awards that favor one of the parents, not under the standard set forth in Ex parte Couch that is applicable in the present case.