THOMAS, Judge,
dissenting.
I respectfully dissent. My review of the record does not lead me to the determination that the evidence before the trial court supports its conclusion that a modification of the parties’ joint-custody arrangement, which our legislature requires us to favor, was warranted. Ala.Code 1975, § 30-3-150.[3] I do not agree that, in this case, the trial court could have “inferred” that D.N.J. (“the father”) had offered proof to the trial court of a material change of circumstances affecting the best interest and welfare of the child.
The majority of this court is convinced that the father presented sufficient evidence to the trial court of a material change in circumstances and that the trial court properly inferred that that change in circumstances affected the best interest and welfare of the child. However, I am wholly unconvinced the trial court could have rightly inferred an effect on the best interest and welfare of the child in light of the utter lack of evidence from which it could have made such an inference.
The majority has relied upon Holsombeck v. Pate, 47 Ala.App. 39, 249 So.2d 861 (Civ.1971), for the proposition that a trial court is “free to infer” an impact on a child when it finds a material change in circumstances. 106 So.3d at 398. The testimony indicating an “impact,” or an effect upon the best interest and welfare of the child, in the present case, pales in comparison to the inferred effects upon the child in Hol-sombeck. Unlike the changes in circumstances and the inferred effects in this case, the material changes upon which the Holsombeck court had permitted an inferred effect upon the child had presented (1) a risk to the life of the child and (2) a continuing effect at the time of the trial.
In Holsombeck, a trial court had awarded custody of one child (“the son”) to the mother and custody of two other children to the father in the parties’ divorce judgment. The father sought a modification of the custody of the son. Testimony revealed that, soon after the divorce, the mother had married a man who did “not enjoy a good reputation for peace and quietude.” 47 Ala.App. at 40, 249 So.2d at 862. Immediately following that marriage, the parents had “difficulty” with visitation exchanges. 47 Ala.App. at 42, 249 So.2d at 863. The trial court awarded custody of *401 the son to his father. 47 Ala.App. at 41, 249 So.2d at 862. This court said:
“Perhaps the evidence as to one change of circumstances could not be considered to materially affect the welfare and best interest of [the son], but we think there was evidence and reasonable inferences to be drawn therefrom of more than one change of circumstance and conditions materially affecting the best interest and well-being of [the son].”
47 Ala.App. at 41-42, 249 So.2d at 868 (emphasis added). This court listed the evidence presented to the trial court of changes in circumstances that had led the trial court to its reasonable inference of an effect upon the welfare and best interest of the son. Those changes in circumstances were (1) the mother’s continuing marriage to a man who had a reputation for violence, (2) the mother’s continuing changes in address, (3) the birth of a half sibling, and (4) the parents’ conflicts at visitation exchanges that had culminated with the “firing of guns and threats of violence” in the presence of the son. 47 Ala.App. at 42, 249 So.2d at 863. Furthermore, in Hol-sombeck, the son had expressed his preference for a change in his custody. Id.
In Holsombeck, we determined that the trial court had not “strayed” too far in inferring an effect on the son although the evidence presented had not “directly shown [the changes in circumstances] to have materially affected adversely the welfare of [the son].” 47 AlaApp. at 42, 249 So.2d at 864. We determined that the trial court must have discerned that the parents were “so imbued with their personal feelings against one another, and their efforts to exercise them, they [had forgotten] the effect their actions and emotions ha[d] upon the children involved.” id We said that the “[c]ustodial and visitation privileges with the children [had been] abused as a club to punish one another.” Id. Furthermore, we stated a belief that “[t]he primary consequence of such acts is permanent harm to the children. Conflict between parents is more damaging to the children after divorce than during cohabitation.” Id.
In the case at hand, I believe that the trial court has “strayed” too far in inferring an effect upon the welfare and best interest of the child. D.M.J. (“the mother”) testified concerning what the main opinion has called her “instability.” I might agree with the majority, and with the mother, that she had moved too many times and that those 'moves were not “good” for the child, yet I, unlike the majority, credit the mother with a pattern of stability beginning in January 2009. That year, the mother began renting a house that she resided in for 23 months.[4] She moved because the owner of the house had sold it. At the time of the trial, she had already settled into a second rental house, owned by her father. Finally, I note that, unlike the son in Holsombeck, who desired to live with his father, in this case the child testified that he is content and that, if given a choice, he would prefer to remain in the joint-custody arrangement.
I am mindful of the ore tenus standard; however, I cannot agree with the majority of this court that the trial court’s judgment is due to be affirmed. The parties shared joint custody, triggering the trial court’s proper use of the best-interest standard, which was explained in Ex parte Couch, 521 So.2d 987, 989 (Ala.1988). The father had the burden to prove that there had been a material change of circumstances *402 since that judgment was entered and that “ ¾ [is] in the [child’s] best interests that the [judgment] be modified...' '' Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)). A trial court is not required to, and, in this case, did not, provide specific findings of fact in its judgment modifying the custody of the child, so, under the ore tenus standard, this court will presume that the trial court made findings that would support its judgment, but only if those findings are supported by the evidence at trial. Marsh v. Smith, 67 So.3d 100, 105-06 (Ala.Civ.App.2011).
I believe that the evidence before the trial court fails to support its inference that the mother’s lifestyle has affected the best interest and welfare of the child; therefore, I conclude that the decision to award sole physical custody of the child to the father is “ ‘plainly and palpably wrong....’” Ex parte Perkins, 646 So.2d 46, 47 (Ala.l994)(quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)). I have neither reweighed the evidence presented to the trial court nor substituted my opinion for that of the trial court regarding disputed evidence, because, after my careful review of the record, I have discovered no evidence presented to the trial court to reweigh or upon which to substitute my judgment of an effect upon the best interest and welfare of the child. In my opinion, the father has simply failed to carry his burden because he failed to present any evidence from which the trial court could have determined, or even inferred, that the mother’s lifestyle had affected the best interest and welfare of the child.
Furthermore, I believe that today’s decision is in direct conflict with former decisions of this court and of our supreme court. In Watters v. Watters, 918 So.2d 913 (Ala.Civ.App.2005), we cited Ex parte Couch, supra, and acknowledged that this court should not
“undercut our supreme court’s pronouncement that we are to encourage parents to work together for the benefit of the family, see Ex parte Couch, 521 So.2d at 990, and the requirement that a party seeking a modification of custody prove a material change of circumstances affecting the best interest and welfare of the child that warrants a modification of custody. Ponder [v. Ponder], 50 Ala.App. [27,] 30, 276 So.2d [613,] 615 [ (Civ.1973) ].”
918 So.2d at 917 (emphasis added).
The main opinion has easily distinguished the facts in Watters; however, I do not believe that it has distinguished its legal conclusions. In Watters, we reversed a trial court’s modification of a custody arrangement based upon our determination that the party seeking a modification of an agreed upon, joint-custody arrangement had not provided evidence to the trial court of a material change of circumstances that warranted a change in the custody of a child. Id. The Watters court was not required to infer an effect upon the best interest and welfare of the child; the mother testified to her improved situation — that she had remarried, that she could stay at home with the child, and that she had moved into a nicer house. Id. at 915. Despite the evidence presented, we reversed, saying:
“The child appears, based on all the evidence of record, to be happy and well-adjusted. The changes in his mother’s life have existed since July 2003. No evidence reveals that those changes, although positive in nature, have affected the welfare and best interest of the child to such an extent that a change in custody is warranted.”
Id. at 917 (footnote omitted).
In this case it also appears that the child is happy and well-adjusted, based on the *403 testimony provided by the mother, the father, and the child. It is apparent that the child feels loved and is loved by the mother and the father. In Watters, we reiterated that “the testimony at trial did not establish that [the changes in the mother’s life had] affected the child in anything more than a tangential way.” Id. at 916.
In Watters, the mother in that case, the party seeking the change in custody, testified as to what she “thought” and to problems she had “noticed”; however, we determined that her testimony was unconvincing because she had not offered specific explanations to the trial court.[5] Id. at 915.
In this case, the father has offered only his perceptions that the child has been affected by the mother’s lifestyle; the father does not testify to a single concrete example of an effect upon the best interest and welfare of the child. My search of the record has failed to yield an inference of a tangential effect, much less a direct effect, upon the best interest and welfare of the child.
In addition, to the extent that the majority of this court has expressed its belief that there was evidence presented to the trial court of a material change of circumstances from which an effect on the best interest and welfare of the child could be inferred, this court may also be in direct conflict with additional decisions of this court and our supreme court. The following opinions do not support the majority’s conclusion that it was in the child’s best interest to modify the parties’ joint-custody arrangement because the mother was. unstable due to her changes in residence. Rey v. Rey, 513 So.2d 1, 1-2 (Ala.Civ.App.1986) (reversing a trial court’s judgment determining that a parent’s sudden move to another state reflected instability); Judah v. Gilmore, 804 So.2d 1092, 1097 (Ala.Civ.App.2000) (quoting Patchett v. Patchett, 469 So.2d 642 (Ala.Civ.App.l985))(not-ing that a mere change in residence does not necessarily justify a change in custody); and C.M.M. v. S.F., 975 So.2d 975, 980 (Ala.Civ.App.2007)(noting that past instability was insufficient to deny a parent of custody of a child when the parent had been stable for a period at time of the trial).[6]
In conclusion, this court should have required what I believe Alabama law requires — in a custody-modification action, a party must provide not an inference but evidence of a material change in circumstances affecting the best interest and welfare of a child. Therefore, I dissent.

. Alabama Code 1975, § 30-3-150, reads in its entirety:
"Joint Custody. It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage. Joint custody does not necessarily mean equal physical custody.”

. The mother testified that she had had 2 live-in boyfriends during 16 of the 23 months that she had lived in that rental house. The majority characterizes two live-in boyfriends as "multiple live-in boyfriends.” 106 So.3d at 398.

. This court also relied on Watters in Kilgore v. Kilgore, 100 So.3d 544, 549 (Ala.Civ.App.2012), writ denied, 100 So.3d 551 (Ala.2012); in Kilgore, we determined that a parent’s general testimony that a joint-custody arrangement is "hard” on a child, without a more specific explanation, is “speculative at best” and does not indicate an effect upon the child.

. The opinions listed reviewed changes of custody and were subject to the heightened McLendon standard, which requires proof that a change of custody will materially promote the best interest of the child, Ex parte McLendon, 455 So.2d 863 (Ala.1984). However, the McLendon standard also requires a party seeking a modification of custody to first prove a material change of circumstances prompting the need for a change in the existing custody arrangement.