The trial court divorced the parties in 1994, awarding to the father custody of the parties' two minor children, a son and a daughter.
Subsequently, the mother petitioned the court to modify the divorce judgment to award her custody of the children, alleging that the father had "effectively denied" her visitation and telephone communication with the children and had denied her information about their school report cards and the status of their health. The mother further alleged that the father had not provided the *Page 424 
children with the necessary and appropriate health care. When she filed her petition, the son was 16 years old and the daughter was 12 years old.
The father denied the allegations of the petition and counterpetitioned, seeking an increase in child support. He amended his counterpetition to allege that the mother had threatened and intimidated the children and had inflicted physical violence upon them and that as a result they feared visitation with the mother. The father asked the court to limit visitation and to require that it take place in the presence of a third party; to restrain the mother from threatening and intimidating the children; and to order the mother to pay his attorney fee. The court entered an order restraining "all parties, their family members, friends and agents" from harassing, threatening, intimidating, or assaulting either of the parties. It specifically stated that failure to comply with the provisions of that order would result in a citation for contempt of court. During the pendency of the litigation, the father again amended his counterpetition to add a request that he be awarded the costs of litigation, pursuant to § 12-19-272, Ala. Code 1975, because, he said, the mother's petition was frivolous and groundless. He also moved to have the judge recuse himself; that motion was denied.
After extended pretrial pleadings, motions, and hearings, the court entered an order indefinitely suspending the mother's visitation rights and child support obligation, but ordering her to continue to provide medical insurance for the children. The court stated that it would consider reinstatement of visitation and child support upon proof by "clear and convincing evidence" of the children's desire to "reestablish a relationship with their mother." The court specifically denied all other requests made by either party. The father appeals.
During the pretrial stages of the case, both parties requested mental examinations of the other. Approximately three weeks before the case was set for trial, the court ordered that the father, mother, and the children be examined by a mental health professional. The examinations were conducted one week before the scheduled trial date. The record indicates that the father and both children had also been examined by a psychiatrist several months earlier and that the psychiatrist's deposition was taken.
The record reveals that the children had consistently insisted that they did not want to live with or even to visit with their mother. Both children relayed this information to the court at the time of trial and to the health care professionals who had examined the children months before the hearing. The testimony revealed that the daughter had told the psychiatrist that she would rather live in a foster home than to live with her mother. The depositions of the psychologist and the psychiatrist and the children's own testimony show that the children were fearful of visits with the mother. The reports from both mental health professionals recommended that the children continue to live with the father. The psychiatrist, who was deposed almost a year before the final hearing, expressed an opinion that placing the children with the mother would be "very, very, destructive and devastating to them." The opinion of the court-appointed psychologist was that the children would be very unhappy with the mother, and that psychologist recommended that they remain with the father. Both of these reports were available to the parties and to the court several months before the case was tried.
Both children testified regarding the mother's inability to control her temper and her activities in a church where "prophesying" about personal situations was commonplace. The trial judge questioned both children after their direct testimony. The judge questioned the then 13-year-old daughter, as follows:
 "THE COURT: And is it your further testimony that if I ordered you to go and visit — you particularly — to go and visit your mother, that you would refuse that order?
"THE WITNESS: Yes, sir, I would.
"THE COURT: Even though it's a court order?
"THE WITNESS: Yes, sir. *Page 425 
 "THE COURT: And even though refusal of that court order would mean that I could put you in juvenile detention?
"THE WITNESS: Yes, sir.
"THE COURT: For an indefinite period of time?
"THE WITNESS: Yes, sir."
The judge questioned the then 17-year-old son, as follows:
 "THE COURT: Okay . . . now, I understand that you have some rather strong feelings about visitation with your mother and living with your mother. It's my understanding now that you're saying that under no circumstances would you live with your mother even if she was granted custody of you and your sister; is that correct?
"THE WITNESS: That's exactly right.
 "THE COURT: And even if you were ordered specifically to go and visit your mother that you would refuse to do that?
"THE WITNESS: That's exactly right.
 "THE COURT: And your answer is the same to that even though if you were ordered to go and you refused to go that I could put you in juvenile detention for an indefinite period of time, is that still your stance?
"THE WITNESS: Yes, sir.
 "THE COURT: Do you understand what juvenile detention is? Do you understand that that would be just like being placed in jail for juveniles?
"THE WITNESS: Probably.
 "THE COURT: And that you would no long[er] attend schools, you would no longer play your sports, you would no longer live with your father, you wouldn't have any contact with him. And in spite of that, you would do that rather than visit with your mother?"
The father testified that he was employed as a painter and was paid $7 per hour. The mother testified that she was employed at an hourly rate of $19.16. Other testimony was elicited from both parties regarding the problems with the children's visitation with the mother. At the conclusion of her testimony, the mother stated that she no longer believed it was in the children's best interests for her to have custody or to force visitation; her attorney moved, pursuant to Rule 15(b), Ala. R. Civ. P., to amend the pleadings to conform to the evidence and asked the court to terminate the mother's parental rights and obligations.
The court entered its order on January 2, 1997, stating, in part:
 "6. . . . The Court finds it is not in the best interest of the children and the parties to terminate parental rights at this time. Given the children's complicity in this estranged relationship with their mother and their complete lack of respect for her, the Court finds it would be in the best interest of the children if the child support obligation of the [mother] was suspended indefinitely until such time as the children, with the help and guidance of their father, want to reestablish a relationship with her.
 "Accordingly, it is ORDERED AND ADJUDGED as follows:
 "A. The visitation schedule heretofore implemented by the Court is hereby suspended indefinitely. The [mother] shall have rights of visitation at reasonable times and places at the option of the children or either of them.
 "B. The obligation of the [mother] to pay child support for the minor children is hereby suspended indefinitely. The income withholding order previously entered is set aside and held for naught.
 "C. Upon motion of either party, and upon proof by clear and convincing evidence of the children's desire and sincere efforts to reestablish a relationship with their mother, the Court will consider reinstatement of a reasonable visitation schedule and the child support obligation of the [mother]."
On appeal, the father contends that the trial judge erred in indefinitely suspending child support; in failing to award him an attorney fee and costs of litigation; and in failing to recuse himself from the proceedings.
The question of terminating child support based upon the child's refusal to visit *Page 426 
with the noncustodial parent has recently been addressed by this court. State ex rel. Shellhouse v. Bentley, 666 So.2d 517
(Ala.Civ.App. 1995). There, in reversing the judgment and remanding the case, we held that one cannot waive visitation rights in exchange for a release from the duty to pay child support — the duty to pay child support cannot be waived, even by agreement. Id., at 518. On remand, the trial court ordered the enforcement of a visitation schedule. The mother then petitioned the court to hold the father in contempt for "not allowing" the child to visit her; the 15-year-old child was unwilling to visit the mother. The court held the father in criminal contempt for the child's refusal to visit the mother and sentenced the father to jail. Further, the court ordered the child to visit with the mother, stating that the child's refusal to visit would be treated as contempt. This court again reversed the judgment and remanded the case. Shellhouse v.Bentley, 690 So.2d 401 (Ala.Civ.App. 1997).
The court abused its discretion in suspending indefinitely the mother's obligation to pay child support. As to this issue, the judgment is reversed.
With regard to the father's contention that the court erred in denying his motion for costs, pursuant to § 12-19-271, we agree. Section 12-19-271 provides for the imposition of costs when one party causes delay and/or a needless increase in the costs of litigation. Both parties had a professional, objective opinion as early as one year before the trial and a second confirming opinion eight months before the trial that it would not be in the children's best interests to live with the mother. The psychiatrist who examined the children testified by deposition that placing the children in the custody of the mother would be "destructive and devastating." In spite of this, the mother pursued the litigation and not until the close of the final hearing did she terminate her pursuit of custody, based on "the testimony today." We find nothing in the testimony of that day that was newly discovered and not a part of the expert's testimony previously taken months earlier. We find this to be a situation where one party increased the costs of litigation needlessly and therefore should bear those increased costs. As to this issue, the judgment is reversed.
On remand, the court is to, in awarding an attorney fee, consider the efforts made to dismiss claims found to be invalid during the discovery stage of litigation. § 12-19-273(2), Ala. Code 1975.
Concerning the father's contention that the trial judge erred in failing to recuse himself, we find no error. Canon 3.C., Canons of Judicial Ethics, sets out the criteria for recusal. Although the father presented affidavits in support of his motion, his evidence did not meet the criteria of the Canons of Judicial Ethics. As to this issue, the judgment is affirmed.
The judgment is affirmed in part and reversed in part, and the case is remanded for the court to enter an order consistent with this opinion.
The father's request for an attorney fee on appeal is granted in the amount of $1,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.