THOMAS, Judge.
 

 Kristi S. Dyess Cheek (“the mother”) and David W. Dyess (“the father”) were divorced by the Montgomery Circuit Court on May 7, 2002. In the divorce judgment, the trial court, among other things, divided the parties’ marital property and awarded the mother rehabilitative periodic alimony in the amount of $750 per month for six months and, thereafter, in the amount of $500 per month for a period of five years. The trial court reserved ruling on whether to award the mother permanent periodic alimony.
 

 The trial court also awarded the mother legal and physical custody of the parties’ three minor children — Thomas, born June 13, 1989, Cameron, born August 10, 1991, and Evan, born October 2, 1997 — subject to the father’s right to visitation. The judgment required both parties to keep the other informed as to the children’s location and where they could be reached.
 

 Additionally, the trial court included the following provision in the divorce judgment:
 

 “5. That neither party shall allow a member of the opposite sex, to which he or she is not related by blood or marriage, to remain past 10:00 P.M. or overnight in any place where the parent and children are residing or staying, and neither parent shall take the children to spend nights in the primary residence of any other such person, even if such person is not present.”
 

 On November 6, 2002, the mother filed a petition for a rule nisi, asserting, among other things, that the father had not complied with the portions of the divorce judgment pertaining to the payment of alimony
 
 *1027
 
 and disallowing a member of the opposite sex to stay overnight where the children are staying. Pursuant to the mother’s petition, and after a hearing on the petition, the trial court found the father in contempt for violating paragraph 5 of the divorce judgment, which orders both parties to refrain from allowing members of the opposite sex who are not related to the parties by blood or marriage to remain overnight in the place where the children are staying. The trial court also found that the father was in arrears with regard to alimony payments, and the court ordered the father incarcerated until $4,500 of overdue alimony payments was paid in full. Two days later, upon payment of the arrearage, the father was released from jail.
 

 In a subsequent proceeding on March 24, 2004, the trial court again found the father in arrears with respect to his alimony obligation, and it entered a judgment for the mother in the amount of $5,000. The trial court also found that the father had again violated the provisions of the divorce judgment disallowing unrelated members of the opposite sex from staying overnight in the same place as the children; the court issued an injunction against the father, prohibiting him from visiting with the children in the home of his girlfriend or any other person of the opposite sex and from having any other such person present during his visitation with the children, regardless of where the visitation occurred.
 

 On March 8, 2005, the father filed the complaint that is the subject of this appeal, in which he requested a modification of the divorce judgment. The complaint, among other things, requested that the father’s alimony obligation be terminated because the mother had remarried and sought custody of the parties’ children because, the father asserted, there had been “a material change of circumstances” and it was no longer in the best interests of the children to remain in the custody of the mother. The father cited as an example of the “material changes” that had allegedly occurred that the oldest child, Thomas, had been allowed to “drink, smoke, have numerous unexcused absences from school, and had been receiving failing grades in school.” Additionally, the father alleged that the mother had refused to enforce the scheduled visitation between the father and the children as outlined in the divorce judgment and that the mother had allowed members of the opposite sex to stay overnight in the place where she and the children were staying.
 

 The mother answered the father’s complaint, admitting that she had remarried but denying that alimony should be discontinued or that custody should be modified. She also filed a counterclaim, alleging, among other things, that the father was again in arrears in his alimony payments.
 

 After an ore tenus hearing held on November 2, 2005, the trial court entered a judgment on January 6, 2006, finding, among other things, that the mother had remarried in November 2004 and determining that the father had paid all of his required alimony payments from March 2004 through November 2004. The court further determined that a custody modification was warranted, and it changed custody of the parties’ two younger children from the mother to the father. The court also found the mother in contempt for “her willful failure or refusal to insure meaningful visitation between and among the children” and the father.
 

 Discussion
 

 The mother first argues that the trial court erred in finding that the father had paid the alimony due to the mother from March 25, 2004, until November 22,
 
 *1028
 
 2004. With regard to that issue, the court stated in its January 6, 2006, judgment:
 

 “Although testimony from the [mother] indicated that the [father] had continued to fail to pay said $500 per month, [the father’s] Exhibit #2 confirmed that, in fact, rehabilitative alimony had been paid each month to the [mother] by the [father’s] mother, Mrs. E.G. Dyess, on behalf of the [father].”
 

 At the hearing, the father submitted an exhibit consisting of copies of four checks, which were dated May 31, 2004, July 12, 2004, August 1, 2004, and September 1, 2004. The names on the account from which the checks were drawn were “Mr. or Mrs. E.G. Dyess.” The mother was listed as the payee, and the checks were in the amounts of $300, $600, $500, and $500, respectively. However, two of the checks were unsigned.
 

 The father testified that he had given money to his mother to pay the mother, that his mother then wrote the checks, and that he and the mother agreed that the mother would pick up the checks from his mother and provide him a written receipt for the checks. The father testified that, to his knowledge, the mother had received two of the checks and that, as to the remaining checks, the father’s mother had notified the mother to pick up the checks but the mother had never retrieved them. The father then testified that the checks presented in his exhibit had never been cashed.
 

 This court outlined the applicable standard of review as to this issue in
 
 Farmers Insurance Co. v. Price-Williams Associates, Inc.,
 
 873 So.2d 252 (Ala.Civ.App.2003):
 

 “ ‘When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987).” ’
 

 873 So.2d at 254 (quoting
 
 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002)). The mother argues that the court’s finding that the father had paid rehabilitative alimony to the mother between the months of March 2004 and November 2004 is unsupported by the record. We agree. The testimony of both the father and the mother, as well as the father’s exhibit, all indicate that the father did not pay to the mother, and the mother did not receive, the alimony payments due her from the father. Because we conclude that the trial court’s finding that the father had paid the ordered alimony to the mother is clearly erroneous and without supporting evidence, we reverse that portion of the court’s judgment.
 

 The mother next argues that there was insufficient evidence before the trial court to support a finding that there was a material change in circumstances such that custody of Cameron, now 16 years old, and Evan, now 9 years old, should be transferred from the mother to the father. In reviewing a trial court’s modification of custody after the custody has previously been awarded in a divorce judgment, this court is governed by the standard outlined in
 
 Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984).
 
 See Smith v. Smith,
 
 865 So.2d 1207, 1210 (Ala.Civ.App.2003).
 

 “Pursuant to
 
 Ex parte McLendon,
 
 a parent seeking to modify custody must demonstrate that the change in custody would materially promote the child’s welfare and that the disruption caused by the change in custody would be offset
 
 *1029
 
 by the advantages of that custody change.”
 

 Smith,
 
 865 So.2d at 1210.
 

 This court recently noted in
 
 Bledsoe v. Cleghorn,
 
 993 So.2d 456, 461 (Ala.Civ.App. 2007), that “our supreme court has reiterated that the
 
 Ex parte McLendon
 
 burden is a heavy burden on the parent seeking a change in custody.”
 
 See also Benton v. Benton,
 
 520 So.2d 534 (Ala.Civ.App.l988)(holding that a stringent standard must be met in order to modify a prior custody determination). In
 
 Bledsoe,
 
 this court, citing our supreme court’s recent decision in
 
 Ex parte Martin,
 
 961 So.2d 83 (Ala.2006), further stated that “a noncustodial parent [seeking to modify custody] must prove an obvious and overwhelming necessity for the change of custody.” 993 So.2d at 462. In
 
 Ex parte Martin,
 
 the supreme court summarized the
 
 McLendon
 
 standard as follows:
 

 “[T]he
 
 McLendon
 
 test for a change of custody after custody is awarded in a divorce judgment is that the noncustodial parent seeking a change in custody must demonstrate (1) that he is fit to be the custodial parent; (2) that material changes that affect the child’s welfare have occurred since the original award of custody; and (3) that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.”
 

 961 So.2d at 87.
 

 This “heavy” burden is applied to parties seeking custody modifications at trial.
 
 See Ex parte Patronas,
 
 693 So.2d 473 (Ala.1997). On appellate review of custody matters, this court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court’s determination will not be disturbed “absent an abuse of discretion or where it is shown to be plainly and palpably wrong.”
 
 Alexander v. Alexander,
 
 625 So.2d 433, 434 (Ala.Civ.App.1993)(citing
 
 Benton v. Benton,
 
 supra). As the Alabama Supreme Court highlighted in
 
 Patronas, “
 
 ‘[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.’ ”
 
 Patronas,
 
 693 So.2d at 474 (quoting
 
 Ex parte Bryowsky,
 
 676 So.2d 1322, 1326 (Ala.1996)). Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court’s judgment.
 
 See Patronas,
 
 693 So.2d at 475.
 

 “However, even under the ore ten-us rule, ‘[w]here the conclusion of the trial court is so opposed to the weight of the evidence that the variable factor of witness demeanor could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed.’ ”
 
 B.J.N. v. P.D.,
 
 742 So .2d 1270, 1274 (Ala.Civ.App. 1999) (quoting
 
 Jacoby v. Bell,
 
 370 So.2d 278, 280 (Ala.1979)).
 

 Notwithstanding the deference due to the trial court’s decision under the ore tenus rule, we agree with the mother that the father failed to meet the heavy burden imposed by
 
 McLendon.
 
 The evidence in the record simply does not support the conclusion that a change of custody would materially promote the children’s best interests and welfare.
 

 The trial court based its determination to modify custody of the two younger children on its findings that, under the mother’s custody and care, the children lacked overall structure and discipline, lacked a respect for authority, maintained poor educational performance at school, and were subject to the mother’s unstable relationships with men. The court also found that the mother did not help to foster a healthy parent-child relationship between the chil
 
 *1030
 
 dren and the father. The trial court’s judgment stated the following:
 

 “The three children ... are not encouraged by the [mother] to respect their father and other adults, nor are they apparently being supervised or taught a work ethic which could be applied to schoolwork. Based on continued failing grades and general out-of-control behavior it appears that the children are allowed to do whatever they wish whenever they wish by the [mother].”
 

 There was little, if any, evidence to support those conclusions, much less that a change in custody would materially promote the children’s best interests and that the positive good brought about by a change in custody would more than offset the disruptive effects of a custody change.
 

 The trial court’s finding with respect to the children’s grades is simply not supported by the record. The uncontradicted evidence at trial was that, even though the children’s grades had declined after the parties’ divorce when the children transferred from a private school to a public school, their grades had improved while in the mother’s custody and before the trial court entered its judgment modifying custody.
 

 The trial court’s finding with respect to the children’s “out-of-control behavior” and the mother’s exercising little or no supervision over them is also not supported by the record. The record reveals that the mother had disciplined the oldest son by restricting him from social interaction and entertainment when his school performance declined or when she caught him drinking or smoking. The oldest son testified that it was the father who had purchased alcohol for him at a restaurant and who had failed to discipline him when he smoked in front of the father. This court fails to see how the father could claim, as one of his bases upon which to modify custody, that the mother does not discipline the children, including allegedly failing to discipline the oldest son for drinking and smoking on occasion, when the record reveals that the father does not discipline the son for those very same offenses.
 
 [1]
 

 As previously stated, the trial court agreed with the father’s claims that the mother was not encouraging the children to visit their father and that she was not helping to foster a healthy relationship between the father and the children. “[V]isitation disputes, alone, are not a sufficient basis upon which to modify an existing custody judgment. However, ... when visitation problems are coupled with one parent’s attempts to damage or destroy the other parent’s relationship with the child, a change of custody may be warranted.”
 
 Bledsoe,
 
 993 So.2d at 461 (citations omitted). In the present case, however, the father produced no evidence indicating that the mother was preventing or hindering the children from visiting with the father. Additionally, although there was evidence indicating that the mother did little to encourage the children to attend visitation with the father — such as by allowing the parties’ daughter, Cameron, to make babysitting plans or social plans, rather than visiting with her father — there was no evidence indicating that the mother attempted or intended to damage or hinder the children’s relationship with the father. Rather, the two older children testified that they were ei
 
 *1031
 
 ther working during the father’s visitation periods or that they did not want to visit with him because they did not wish to leave their jobs and Mends in Montgomery to go to the father’s residence because, they thought, it was “boring.” Furthermore, the father admitted that most of the time he accepted the two older children’s answers that they were working or busy and that he did not apply any additional pressure on them to go with him for the visitation periods.
 

 The final basis upon which the trial court determined that custody of the two younger children should be modified was that the court found that the children had been exposed to the mother’s “revolving door” of boyfriends and to her estrangement from her current husband, from whom she was, at the time of trial, separated. The mother remarried in November 2004, but she subsequently separated from that husband in June 2005. The father testified that the mother had dated two or three men since the parties’ divorce, including a man whom, the father alleged, she was currently dating although she was not yet divorced from her husband. The father testified that he was not “saying anything” about whether or not the mother’s current boyfriend was a bad or negative influence on the children; however, he noted that the court-ordered parenting class the parties had attended counseled against exposing the children to a parent’s numerous romantic relationships.
 
 [2]
 

 In
 
 Bratton v. Romine,
 
 819 So.2d 58, 61 (Ala.CivApp.2001), this court reiterated that “[u]nder the
 
 McLendon
 
 standard, indiscreet behavior alone is not sufficient to justify a change in custody.” Rather, the party seeking to modify custody must establish a substantial detrimental effect on the welfare of the children as a result of the “indiscreet” conduct.
 
 See Benton v. Benton,
 
 supra; and
 
 Smith v. Smith,
 
 464 So.2d 97 (Ala.Civ.App.1984). Despite the father’s contention that several factors, including the mother’s alleged unstable romantic relationships, warranted a change in custody of the children, we conclude that there is insufficient evidence to support a change in custody based on this factor alone or in combination with all the father’s other allegations. Because there is insufficient evidence to support the trial court’s determination that the father had met the stringent standards required under
 
 McLendon
 
 for a custody modification, we hold that the trial court erred in changing custody of the parties’ two younger children to the father.
 
 See Ex parte Martin,
 
 supra; and
 
 B.J.N.,
 
 supra.
 

 Finally, the mother contends that there was insufficient evidence to support a finding that she was in contempt for willfully failing or refusing to ensure meaningful visitation between the children and the father. The trial court’s contempt judgment, however, imposed no sanction upon the mother, nor were the mother’s person, property, or rights adversely affected by the judgment. Therefore, the trial court’s finding of contempt, even if erroneous, was harmless, and we pretermit any further discussion of the issue. Rule 45, Ala. R.App. P.
 

 In the summary-of-the-argument section of the mother’s appellate brief, the mother contends that the trial court erred by awarding the father an attorney fee. However, that contention is never re
 
 *1032
 
 peated anywhere else in the mother’s brief or developed by argument or citation to authority. Accordingly, we have not considered or addressed the issue.
 
 See McAliley v. McAliley,
 
 638 So.2d 10 (Ala.Civ.App.1994)(holding that an appellate court will not consider issues that are not properly delineated).
 

 For the foregoing reasons, we reverse the trial court’s judgment insofar as it found that the father had paid the mother all the court-ordered alimony due from March 2004 through November 2004. We also reverse the court’s judgment insofar as it modifies custody of the parties’ two younger children. We affirm the judgment in all other respects, and we remand the cause for proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 MOORE, J., recuses himself.
 

 [1]
 

 . Although the trial court made several findings regarding discipline problems with the oldest child, custody was not modified as to that child. Therefore, the trial court's findings regarding the parenting problems with the oldest child are only relevant as they relate to any potential problems that would affect the other two children in the mother's primary care.
 

 [2]
 

 . The father also testified that, before the mother and her current husband were married in November 2004, the mother’s current husband had stayed overnight with the mother, in violation of the court's orders in the judgment of divorce. However, the father has been found in contempt for violating the same provision in the divorce judgment twice since the divorce judgment was entered.