MOORE, Judge.
Janice Anita Jones (“the mother”) appeals from a judgment entered by the Montgomery Circuit Court (“the trial court”) modifying custody of Brandon McCoy (“the child”) in favor of Gary Tyrone McCoy (“the father”). We affirm the judgment.

Background

In November 1997, the mother and the father were divorced by a judgment of the *1078 89th District Court of Wichita County, Texas (“the Texas divorce judgment”). Pursuant to the Texas divorce judgment, the mother was awarded physical custody of the child, who was born in November 1996, and the father was ordered to pay child support. In 1998, the Texas divorce judgment was domesticated in the trial court pursuant to a modification action. In May 1999, the trial court entered a judgment modifying the father’s visitation schedule with the child, limiting contact between the father and the mother’s new husband (“the stepfather”), and ordering the following:
“7. That the [mother] shall refrain from calling [the stepfather] by any non-stepparental name, such as ‘Daddy,’ and shall discourage the child from doing so. The [mother] shall refer to the [father] in the child’s presence and in speaking to the child as the child’s Father, using whatever the name the child is accustomed to calling the father. The [mother] shall make affirmative efforts to teach the child the appropriate relationship between a child and his biological father and the appropriate relationship between a child and his stepfather.”
On July 12, 2011, the father, who now lives in the State of Florida, filed a petition seeking to modify custody of the child. On August 2, 2011, a guardian ad litem was appointed to represent the child’s best interests, and, within less than three weeks, the guardian ad litem moved for expedited pendente lite relief; he recommended that the trial court award the father pendente lite custody of the child. On September 13, 2011, the trial court denied the guardian ad litem’s motion.
On June 11, 2012, the guardian ad litem notified the mother that he intended to call Dr. Bridgett Smith as a witness at the final hearing; the guardian ad litem also notified the mother that Dr. Smith had met with the child on two occasions and that Dr. Smith wished to meet with the mother before the final hearing, which was scheduled to begin a week later. On June 15, 2012, the mother filed a motion in limine, seeking to prohibit the guardian ad litem or the father from offering into evidence any testimony or evidence from or relating to Dr. Smith, on the grounds that the mother, the child’s physical custodial parent, had not authorized Dr. Smith to evaluate the child and that the mother had had no knowledge of Dr. Smith until one week before the trial. The trial court allowed Dr. Smith to testify, but limited her testimony.
On August 7, 2012, the trial court entered a final judgment, finding that the father had met his burden under Ex parte McLendon, 455 So.2d 863 (Ala.1984); awarding custody of the child to the father; setting a visitation schedule for the mother; ordering the mother to pay child support in the amount of $100 per month, to cover all costs associated with her visitation with the child in the State of Florida, and to pay 50% of all reasonable costs for the child to participate in sports and extracurricular activities; and ordering the parties to each pay 50% of. the guardian ad litem’s fees, including any fees owed to Dr. Smith.
On August 31, 2012, the mother filed a motion to alter, amend, or vacate the trial court’s final judgment, pursuant to Rule 59, Ala. R. Civ. P., and a motion for relief from the judgment, pursuant to Rule 60, Ala. R. Civ. P., asserting that the father’s child support had erroneously been rescinded as of June 2011 rather than as of June 2012; she also moved to stay the trial court’s judgment pending resolution of her postjudgment motions.[1]
*1079 On September 11, 2012, the trial court granted the mother’s motion to stay that portion of the final judgment ordering the mother to pay one-half of the guardian ad litem’s fees pending resolution of the mother’s postjudgment motions. On September 14, 2012, the trial court amended, pursuant to Rule 60, Ala. R. Civ. P., its final judgment to reflect that the father’s child-support obligation was rescinded as of June 22, 2012. On October 26, 2012, after a hearing, the trial court denied the mother’s motion to alter, amend, or vacate the final judgment. On November 7, 2012, the mother timely filed her notice of appeal; she posted a supersedeas bond, presumably to stay that portion of the trial court’s judgment ordering her to pay one-half of the guardian ad litem’s fees.

Analysis

We first address the mother’s argument that the guardian ad litem violated her constitutionally protected parental rights by submitting the child for a psychological assessment without the mother’s knowledge and consent. The mother, relying on R.S.C. v. J.B.C., 812 So.2d 361, 366 (Ala.Civ.App.2001), asserts that, because she was the physical custodian of the child, she had a fundamental right to make decisions concerning the “care, custody and control of her child” and that she should have been consulted before the child was taken to Dr. Smith for a psychological assessment or evaluation.
we agree with the mother that, as the physical custodian of the child, she was entitled to make decisions regard-regardthe child, the father also was entitled to make decisions on behalf of the child. Pursuant to the Texas divorce judgment, the mother and the father held joint legal custody of the child. “Joint legal custody” is defined in Ala.Code 1975, § 30-3-151(2):
“Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.”
Because both parents held legal custody of the child, it was within either parent’s authority to authorize medical care for the child; we conclude that a psychological evaluation falls within that category.
The guardian ad litem represented to the trial court that the father had authorized Dr. Smith’s assessment of the child and that the father had driven the child to meet with Dr. Smith during those times when the child was in the father’s care. Because Dr. Smith was authorized by the father to assess and evaluate the child, we conclude that Dr. Smith’s assessment and evaluation of the child did not amount to a violation of the mother’s constitutional rights to parent the child. See Morgan v. Morgan, 964 So.2d 24 (Ala.Civ. App.2007) (holding that, when parents share equal custody rights, a court adopting the decision of one parent affecting the welfare of the child does not violate constitutional rights of other parent).
We next address the mother’s argument that the trial court denied her due process of law by requiring her to present her witnesses before the father had rested his case. In her brief filed with this court, however, the mother has failed to properly support her argument. The only citation *1080 to authority provided by the mother is a single citation to the Sixth Amendment of the United States Constitution. That amendment relates to criminal prosecutions and has no relevancy to a custody-modification action. It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ. App.1996). “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support that party’s position. If they do not, the arguments are waived.” White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008). Because the mother has not provided this court with citations to relevant authority, we need not address this argument further.
We next address the mother’s assertion that the trial court erred in denying the mother’s motion to recuse the guardian ad litem. The mother asserts that the guardian ad litem failed to properly understand that his role in the case was to advocate for the child’s best interests and not to advocate for the child’s personal wish to live with the father. The mother asserts that she was unduly prejudiced because, she says, as a result of his not understanding his role in the case, the guax*dian ad litem formed his opinion before all the evidence had been presented.
We agree with the mother that the role of the guardian ad litem is to zealously advocate for the best interests of the child and not necessarily to repi-esent the position of the child in relation to the litigation. As recognized in Steven N. Peskind, Evi-dentiary Opportunities: Applicability of the Hearsay Rules in Child Custody Proceedings, 25 J. Am. Acad. Matrimonial Law. 375, 396 (2013): “[Jjudges often appoint guardians ad litem, who serve as court investigators and take on a quasi-expert role in rendering opinions concerning the best interest of the children.”
“Unlike the child’s attorney whose role is generally to repi-esent the stated wishes of the child, the [guardian ad litem] is generally expected to advocate for the best interests of the child, whether or not the child is in agreement. Moreover, the [guardian ad litem] ‘owes his or her primary duty to the court and not to the child-client alone.’ ”
M. Boumil, C. Freitas & D. Freitas, Legal and Ethical Issues Confronting Guardian Ad Litem Practice, 13 J.L. & Fam. Stud. 43, 45-46 (2011) (footnotes omitted).[2]
In this case, the guardian ad litem expressed his belief in a document filed with the trial court that it was his “sworn duty to zealously advocate for [the child’s] position” that physical custody should be transferred to the father. From that statement, and others contained in the i'ec-ord, it appears that the guardian ad litem understood that he was acting as an attorney for the child, rather than as a guardian ad litem. However, the fact that the guardian ad litem may have misunderstood his appointed role does not, in and of itself, demonstrate that the mother’s rights were unduly prejudiced.
The mother cites only M.B. v. R.P., 3 So.3d 237 (Ala.Civ.App.2008), in support of *1081 her argument that her rights were unduly prejudiced. In M.B., this court held that a party had been prejudiced because the juvenile court considered a recommendation of a guardian ad litem who did not attend the trial and, thus, did not consider the evidence presented at the trial when making the recommendation and, further, had not been subject to cross-examination. See also Ex parte R.D.N., 918 So.2d 100 (Ala.2005) (holding that party’s right to due process is violated when court considers ex parte recommendation of guardian ad litem). In this case, the mother does not assert that she was denied a full and fair opportunity to contest the recommendations of the guardian ad litem or his purported misunderstanding of his role in the case. Therefore, M.B. does not support her argument, and we find no basis for concluding that the mother was denied due process or that the guardian ad litem should have been recused.
We next address the mother’s assertion that she was unduly prejudiced by the child’s presence in the courtroom during her testimony. The mother points out that the guardian ad litem specifically requested that the child enter the courtroom for only the mother’s testimony. The trial court allowed the child to enter and remain in the courtroom, over the mother’s objection, based upon the position taken by the father’s lawyer and the guardian ad litem that the child was a party to the custody-modification action. The mother argues that the child was not a party to the custody-modification action.
 We agree with the mother that the child was not a party to the custody-modification action. See Cochran v. Cochran, 49 Ala.App. 178, 189, 269 So.2d 884, 895 (Civ.App.1970), overruled on other grounds, 289 Ala. 615, 269 So.2d 897 (1972) (children of parties to a divorce action are not parties themselves and the appointment of a guardian ad litem is not required). However, the mother does not develop any cogent argument as to how the child’s nonparty status precluded the trial court from allowing the child to be present in the courtroom during her testimony. Assuming the mother is- complaining that the trial court violated Rule 615, Ala. R. Evid. (“At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order of its own motion.”), the mother fails to acknowledge “[t]he general rule ... that excluding witnesses upon invocation of ‘the rule’ (i.e., the rule requiring sequestration of witnesses) is a matter left largely to the discretion of the trial judge and that his decision will not be disturbed on appeal absent a showing of an abuse of discretion.” Christiansen v. Hall, 567 So.2d 1388, 1341 (Ala.1990). The mother has failed to identify any undue prejudice resulting from the child’s presence in the courtroom during her testimony that would lead this court to conclude that the trial court exceeded its discretion. As a result, we find no basis for reversal as a result of the trial court’s ruling on that issue. See Rule 45, Ala. R.App. P.
We next address the mother’s argument that the trial court’s judgment must be reversed because the father failed to meet his burden under Ex parte McLendon, 455 So.2d 863 (Ala.1984).
“In situations in which the parents have joint legal custody, but a previous judicial determination has granted primary physical custody to one parent, the other parent, in order to obtain a change in custody, must meet the burden set out in Ex parte McLendon [, 455 So.2d 863 (Ala.1984) ]. See Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995). The burden set out in McLendon requires the parent seeking a custody change to demonstrate that a material *1082 change in circumstances has occurred since the previous judgment, that the child’s best interests will be materially promoted by a change of custody, and that the benefits of the change will more than offset the inherently disruptive effect resulting from the change in custody. Ex parte McLendon, 455 So.2d at 866.”
Dean v. Dean, 998 So.2d 1060, 1064-65 (Ala.Civ.App.2008). The trial court made no specific findings in its judgment; thus, we must assume that the trial court implicitly made those findings necessary to support its judgment. See, e.g., McCormick v. Ethridge, 15 So.3d 524, 529 (Ala.Civ.App. 2008).
“A material change of circumstances occurs when important facts unknown at the time of the initial custody judgment arise that impact the welfare of the child.” K.E.W. v. T.W.E., 990 So.2d 375, 380 (Ala.Civ.App.2007). “The [Ex parte ] McLendon [, 455 So.2d 863 (Ala.1984),] standard is a ‘rule of repose,’ meant to minimize disruptive changes of custody because this Court presumes, that stability is inherently more beneficial to a child than disruption.” Ex parte Cleghom, 993 So.2d 462, 468 (Ala.2008).
“On appellate review of custody matters, [the appellate] court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court’s determination will not be disturbed ‘absent an abuse of discretion or where it is shown to be plainly and palpably wrong.’ Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App.1993) (citing Benton v. Benton, [520 So.2d 534 (Ala.Civ.App.1988) ]). As the Alabama Supreme Court highlighted in [Ex parte ] Patronas, [693 So.2d 473 (Ala.1997) ], ‘ “[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” ’ Patronas, 693 So.2d at 474 (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court’s judgment. See Patronas, 693 So.2d at 475.”
Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007).
We conclude that the trial court had before it sufficient evidence from which it could reasonably have determined that a material change of circumstances had occurred since the entry in 1997 of the Texas divorce judgment awarding physical custody of the child to the mother. Although we agree with the mother that the mere passage of time, see Cochran v. Cochran, 5 So.3d 1220 (Ala.2008), and the persistence of visitation disputes, id,., alone do not constitute a material change of circumstances that would jüstify a modification of physical custody, we conclude that the trial ■ court had before it evidence of other factors that could not have been previously considered in 1997. Specifically, the trial court heard evidence indicating that the mother was not meeting the social and athletic needs of the child and that the mother’s behavioral rules were stifling the ability of the child to mature into an independent and self-reliant young adult. That evidence, as accepted by the trial court, demonstrated that, since the last custody judgment, a material change of circumstances had occurred that had negatively impacted the welfare of the child.
The trial court also heard evidence that would support a reasonable conclusion that the child’s social and athletic interests would be materially promoted by moving in with the father. The child testified that, while living with the mother, he was not allowed to leave the driveway *1083 of his mother’s house or socialize with children in their neighborhood, although they lived in a prestigious, gated community; that, until the custody-modification action was filed, he had been required to ride in the backseat of the mother’s car, presumably for safety;[3] that, at the age of 15, he was rarely allowed to have friends over to visit at the mother’s house and the mother refused to drop the child off at the movie theater with his friends to see a movie; and that he had only recently been allowed to watch “PG” rated movies. The mother admitted that, at the age of 15, the child had never had friends sleep over at the mother’s house and had never been invited to a friend’s house for a sleepover. The evidence further showed that the child had expressed an interest in playing football,[4] but the mother had maintained his enrollment in a magnet school that did not maintain a football program.
On the other hand, the father had arranged for the child to play football at a local high school, and, in fact, the child had begun practicing with that football team during his 2011 summer visitation with the father. The father also arranged for the child to have a cellular telephone, which the mother would not allow. The child testified that the father had also allowed him to have friends over and had allowed the child to socialize with friends at other places; that the father had fostered the child’s independence; that the father had taught the child to cook and to perform chores that the mother regularly did for the child and to be self-reliant; and that the father had taught him skills that he would need to live on his own when he left home for college.
Dr. Smith also testified that the child was very bright and had articulated reasons why he wanted to leave the mother’s home. According to Dr. Smith, although the child had identified several negative factors associated with living in the mother’s home, he had been more focused on the positives he believed would result from a move to the father’s home. Dr. Smith testified that the child was mature in some ways and immature in others. She testified that she had found no clinical signs that the child had been coached and that she had discussed with the child that life with the father, a retired Air Force general, might well be more structured and disciplined than it was with the mother, an unemployed stay-at-home mom, and the stepfather, a practicing physician. According to Dr. Smith, the child was prepared for that possibility.
Whether the benefits from changing physical custody from the mother to the father will more than offset the inherently disruptive effect resulting from the change in custody was a question of fact for the trial court. Ex parte Blackstock, 47 So.3d 801 (Ala.2009). The trial court could have reasonably found that the evidence regarding the more social and independent environment found in the father’s home and the child’s response to that environment established that the child’s best interests would be materially promoted by a change of custody and that the benefits of that change would more than offset the inherently disruptive effect resulting from a change in custody.
*1084 We acknowledge that the judgment results in the child’s being removed from the home of the mother, in which he had long resided with his half brother. However, in A.B. v. J.B., 40 So.3d 723, 729 (Ala.Civ.App.2009), this court held that a trial court may separate half siblings “if the trial court concludes, based on sufficient evidence in the record, that the separation will serve the best interests of the children at issue.” The child testified that he believed he and the half brother could sufficiently maintain their relationship during his visits to the mother’s home. As the fact-finder, the trial court was entitled to accept the child’s testimony on that issue. Cheek v. Dyess, supra.
The mother also challenges the visitation schedule established for her in the trial court’s judgment and asserts that the trial court erred in awarding her less time with the child than the father had previously received. The mother, however, has failed to cite any authority in support of her argument. As a result, we will not address that issue. See Rule 28(a)(10); Asam, supra; and White Sands Group, supra.
For the foregoing reasons, the judgment of the trial court is affirmed. Both parties’ requests for attorney fees on appeal are denied.
AFFIRMED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., dissents, with writing.

. On September 10, 2012, the guardian ad litem moved the trial court to amend the final *1079 judgment to reduce the mother's visitation schedule from two weekends a month to one weekend a month; the guardian ad litem reported that the motion had been filed at the child’s request. That motion, however, was untimely filed. See Rule 59, Ala. R. Civ. P. (requiring that postjudgment motions seeking to alter, amend, or vacate a judgment be filed within 30 days of entry of a trial court’s judgment).

. See also Ala.Code 1975, § 12-15-304(a) (mandating that a guardian ad litem be appointed for a child who is the subject of dependency and termination-of-parental-rights proceedings and that the guardian ad litem’s role "shall be to protect the best interests of the child”); and Ala.Code 1975, § 26-14-11 (“In every case involving an abused or neglected child which results in a judicial proceeding, an attorney shall be appointed to represent the child in such proceedings. Such attorney will represent the rights, interests, welfare, and well-being of the child, and serve as a guardian ad litem for the child.”).

. At the time of the trial, the child was 15 years old, stood 5'9" or 5'10”, and weighed between 180 and 200 pounds.

. The mother testified that the child had participated in numerous other activities, i.e., that he played tennis and swam at the YMCA, had participated in competitive basketball for several years in the YMCA leagues, had played chess and studied French, had participated in an "Ultimate Frisbee” Club at school, was a member of the Banjo Band at school, and previously had studied Taekwon-do.