THOMAS, Judge.
Steven Jeffery Williams (“the father”) and Jennifer Williams (“the mother”) were divorced by a judgment entered by the Etowah Circuit Court in 2008. There are two children of the marriage. The circuit court awarded the father custody of the children, subject to the mother’s award of supervised visitation. In 2009 the circuit court found the father in contempt regarding his lack of compliance with the mother’s right to visitation. In 2011 the circuit court ordered the mother to pay $82 per week in child support. In 2012 the circuit court allowed the father to relocate the children to Fairhope, which is approximately 300 miles from where the mother lives in Gadsden. The mother had access to her parents’ mobile home in a retirement community in Fairhope after the father relocated the children, but she continued to live in Gadsden.
On May 21, 2013, the mother filed a complaint seeking a modification of custody and a finding of contempt against the father. The father answered and filed a counterclaim seeking a modification of custody and a finding of contempt against the mother. The dispute centered on visitation. The children, who were at that time ages 14 and 10, respectively, were participating in sports and other weekend activities that conflicted with the mother’s twice-per-month weekend-visitation schedule. In fact, on June 4, 2013, the father filed a motion seeking an “immediate ruling” al *101 lowing the older child to participate in football and other “reasonable extracurricular activities,” which the mother opposed and the circuit court denied.
The mother filed an amended’ complaint seeking a modification of custody and a finding of contempt in which she asserted that the father had attemptéd to alienate the children from the mother and had continued to interrupt her visitation after she had filed her original' modification complaint on May 21, 2013. Upon the mother’s request, the circuit court ordered the father to allow the mother to exercise an extended visitation over a holiday weekend. The circuit court appointed a guardian ad litem for the children. The children’s guardian ad litem recommended a visitation schedule tailored to avoid weekends when the children had football games.
On September. 6, 2013, the circuit court entered an order, which required the mother to exercise visitation with the children in Fairhope during football season. Thereafter the parents continued to file motions that displayed their lack of communication, agreement, and cooperation. On October 9, 2014, the circuit court entered an order apprising the parents that it would not engage in entering “week to week orders” compelling the parties, to cooperate with each other. It specifically warned the father that he had placed himself at risk of contempt sanctions.
The children’s guardian ad litem filed a second recommendation in which she noted that the parties had contacted her after business hours on “numerous occasions” and that she had attended many meetings and hearings with the parties. According to the children’s guardian ad litem, the older child desired to live with the mother.
A trial was held on June 16, 2014, and October 27, 2014. At that time the children were 15 and 11 years old, respectively. ■ The circuit court interviewed the children; however, the unopposed in camera interview was not transcribed. On November 7, 2014, the circuit court entered a judgment, which reads, in pertinent part:
“Due to mutual consent regarding a set off of a property settlement due with child support owed, the Court determines neither party is indebted to the other at this time for either, and all property settlement obligations of Far ther and child support obligatiohs of the Mother' have been satisfied to date.
“As to custody, a review of the previous orders prior to the matter coming before this Judge indicates custody was placed with the Father primarily due to [post-traumatic stress disorder] "sustained by the Mother at the hand of a second husband. The Mother was required to undergo counseling, which she has done, and has shown improvement to the point the counselor opined that the Mother is now capable of handling custodial responsibilities. 1
“It also appears to the Court that the Father has taken intentional advantage of the Mother’s misfortune to either play games with the Mother and/or interpret/apply the visitation schedule hyper technically to the Mother’s disadvantage. Further, Father is not keeping Mother fully informed of their children’s health status, academic, or extracurricular issues or even when they are in Etowah County for family visits.
“This type of intentionally self-serving conduct'by [the] Father cannot be in the best'-interests of the children, and it causes the Court to question the current custodial arrangement as a whole and whether it is in the children’s best interests to maintain the status quo.
“All these factors, combined with some diminishment of the oldest child’s academic performance since enrolling in Baldwin County and his earnest desire *102 to return to Etowah County/Glencoe schools, combine to result in the Court determining that while legal custody of the children shall be jointly held, the Mother has met the [standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984),] in regards to the care, custody, and control of [the older child]. Primary physical custody of [the older child] shall now be vested with the Mothei*.
“While both parents are fit custodians (and primary care, custody, and control of [the younger child] remains with the Father), it appears to the Court that the oldest child materially benefits from staying with his Mother by more likely having better academic performance, better discipline, and a .higher degree of satisfaction and. happiness. See Garrison v. Garrison, 557 So.2d 1277 (Ala.Civ.App.1990).
“While the child’s desires alone are insufficient to constitute a material change of circumstances, they are sufficient when combined with other evidence. See Nauditt v. Haddock, 882 So.2d 364 (Ala.Civ.App.2003).
“The positive good brought about by the modification will more than offset the inherently disruptive effect of moving [the older child] from Baldwin County back to Etowah and also separating him from [the younger child].”
The circuit court’s-.judgment also contained orders regarding the each parent’s visitation (one weekend per month) with the child not in his or her custody. The circuit court’s judgment reads, in pertinent part:
“The visitation arrangements shall henceforth be as follows:.
“a) The first weekend of the month from 7 p.m. Friday until 5:00 p.m. on Sunday, the first weekend being defined by the first Friday of the month. Visitation [is] to occur in Fairhope at [the] Mother’s place of residence there. The Mother shall bring [the older child] with her when she travels to Fairhope and [the older child] shall visit with his Father on those weekends for at least one evening each time and the two boys will be together with the Mother at least one evening those weekends, as well.”
On November 25, 2014, the father filed a postjudgment motion. On December 5, 2014, the mother filed a response to the father’s postjudgment motion. After a hearing, the circuit court entered an amended judgment on February 19, 2015; the amended judgment clarifies certain visitation provisions and reads, in pertinent part:
“4. All visitation periods of either party shall [take] precedence over extracurricular activities. For there to be a working, meaningful visitation schedule in any case, a spirit of cooperation is required of the parties. Lacking that, the Court can only rule as follows:
“If the minors can engage in extracurricular activities that do not interfere with visitation periods, or if the noncustodial parent, by that parent’s consent, wishes to waive or reschedule a visitation period for the minors to engage in same (not imposed by the custodial parent); then same will be encouraged. Otherwise, visitation periods will always take precedence over extracurricular activities.
“If a non-custodial parent defers on a visitation period in order to allow the child to participate in an extracurricular activity, said visitation period shall be made up within the next thirty (30) days. The timing of the make-up period will be set with input from bpth parents.”
(Emphasis added.)
The mother filed a notice of appeal on March 12, 2015; the father filed a cross- *103 appeal on March 27, 2015. The parents each seek review of whether the circuit court abused its discretion by separating the children. The mother seeks review of whether the circuit court abused its discretion by ordering her to travel to Fairhope to visit the younger child. The father argues that the circuit court erred by failing to “employ a more specific visitation schedule,” and he seeks our review of whether the circuit court erred by declining to find the mother in contempt for her failure to pay child support or by failing to award him a judgment on the mother’s child-support arrearage.

The Split-Custody Award

“Before we begin our analysis, we first consider the applicable standards of review. When this Court reviews a trial court’s child-custody determination that was based upon evidence presented ore tenus, we presume the trial court’s decision is correct: ‘ “A custody determination, of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....”’ Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is baséd on the' trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses' is especially important in child-custody cases. • ‘In child custody cases especially, the perception of an attentive trial judge is of great importance.’ Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981). In regard to custody- determinations, this Court has also stated: ‘It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).”
Ex parte Fann, 810 So.2d 631, 632-33 (Ala.2001).
Siblings may be separated if the trial court concludes, based on sufficient evidence in the record, that the separation will serve the best interests of the children at issue. A.B. v. J.B., 40 So.3d 723, 729 (Ala.Civ.App.2009); see also Jones v. McCoy, 150 So.3d 1074, 1084 (Ala.Civ.App.2013). Neither parent sought ah award of split custody, and each parent asserts on appeal that the circuit court erred by separating the children. The circuit court indicated that it considered the effect of separating the children; it specifically noted that the positive'good brought about by the change in the older child’s custody offset the inherently disruptive effect of separating the older child from the younger child. “In child custody eases especially, the perception of ari attentive trial judge is of gréat importance.” Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).
The mother argues that the circuit court should have awarded her custody of the children because she met the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), and she points out certain favorable testimony. However, we must consider all the testimony and the presumption afforded to a judgment that is, at least in part, based on evidence adduced at an in camera interview, a transcript of which is not presented for our review. “In the absence of a transcript of an in camera interview with a child, a reviewing court must assume that the evidence the trial court received during that interview is sufficient to support that court’s judg *104 ment.” Casey v. Casey, 85 So.3d 435, 441 (Ala.Civ.App.2011); see also Waddell v. Waddell, 904 So.2d 1275, 1279-80 (Ala.Civ.App.2004); Hughes v. Hughes, 685 So.2d 755, 757 (Ala.Civ.App.1996); and Reuter v. Neese, 586 So.2d 232, 235 (Ala.Civ.App.1991). Therefore, we reject the, mother’s argument that the circuit court erred by separating the children.
The father argues the circuit court entered an award of split custody without “just reason or cause.” We do not agree. Although a “child’s preference is only one factor to be considered by the trial court” when fashioning a custody award, Pullum v. Webb, 669 So.2d 925, 927 (Ala.Civ.App.1995) (citing Hayes v. Hayes, 512 So.2d 119 (Ala.Civ.App.1987)), the circuit court could have deemed the older child to have been of sufficient age and discretion to merit aligning its custody award with his wishes. See Enzor v. Enzor, 98 So.3d 15, 19 (Ala.Civ.App.2011) (noting that, while not dispositive, the custody preference of a 17-year-old child is entitled to much weight). Furthermore, other testimony demonstrated that the custody award would serve the children’s best interest. Janet Louise Lawson, the children’s counselor, who testified on behalf of the father, said that the older child was “fine” in the father’s custody but that he was “emotionally impacted” by the custody litigation. Lawson first testified that there was no reason to change the children’s custody; however, she later admitted that the older child had indicated that he wanted to live with the mother and that he wanted to live in Gadsden, and, she said, the younger child usually said that he wanted to live with the father in Fairhope. At the post-judgment hearing it appears that the parties were aware that the older child had expressed a preference to live with the mother. The father’s attorney said: ‘Your Honor, the boy wanted[ — ]the older boy[ — jwanted to live with mom, I understand.” We - conclude that the evidence supports the circuit court’s judgment awarding the parents split custody of the children.

The Visitation. Award

The circuit Court entered a standard-visitation order that addressed each parent’s visitation during the school year, the summer, and, as amended, six holidays with the child not in his or her custody.
“An award of visitation rights to a noncustodial parent pursuant to a divorce decree is within the trial court’s sound discretion and is subject"to being set aside for a plain and palpable abuse of that discretion or error as a matter of law. See, e.g., Hester v. Hester, 460 So.2d 1305 (Ala.Civ.App.1984). The best interests and welfare of the child are to be the primary consideration in making the award. Allen v. Allen, 385 So.2d 1323 (Ala.Civ.App.1980), When the trial court makes a determination after hearing all the relevant evidence without the benefit of a jury, there is a strong presumption that its judgment is correct. See, e.g., Whitt v. Whitt, 460 So.2d 1328 (Ala.Civ.App.1984).”
Green v. Green, 474 So.2d 1135, 1136 (Ala.Civ.App.1985).
The mother presents a less than one-page argument that the circuit court abused its discretion by ordering her to travel to Fairhope to visit the younger child. The mother testified that, if she was awarded custody, she preferred an order requiring her to travel to Fairhope one weekend per month and requiring the father to travel to Gadsden one weekend per month.. The circuit court reduced the visits from twice per month to once per month, and, although the circuit court did not require the father to travel, it required the mother, as she requested, to travel one *105 weekend per month. The mother did not file a postjudgment motion seeking any other requirement regarding visitation; however, in her response to the father’s postjudgment motion, the mother requested an order requiring the father-to travel to Gadsden every month for visitation or to alternate visitation between Fairhope and Gadsden, which the circuit court-did not award. The mother cites only .Rule 32(A)(1)(b), Ala. R. Jud. Admin., which provides for a deviation from the child-support guidelines in situation in which extraordinary costs of transportation are borne substantially by one parent in exercising visitation.. The circuit court did not order either party to pay child support; therefore, Rule 32 is not applicable to the issue presented. The mother has not properly presented the issue for review. See Rule 28(a)(10), Ala. R.App. P.
The father argues that the circuit court erred by failing to “employ a more specific visitation schedule” and that the circuit court did “nothing to give the parents guidance as to whether or not extracurricular activities of the children supersede visitation.” The father testified that the standard-visitation schedule did not contain enough detail,.,that it was necessary for the circuit court to “go through and write every little date and time' out,” and that the circuit court needed to “specify every visit, every weekend that there’s a visit to be had, the time, the date, the hour, the minute, the second all the way through.” The mother testified that specific dates and times would be “great.” The father’s arguments are, however, unsupported by the record. The award of standard visitation is sufficiently detailed, and the amended judgment twice clarifies that visitation periods always take precedence over extracurricular activities.

The Contempt Issue

The father urges this court to find the mother in contempt for her admitted failure to pay child support and to “mete out” punishment, which is, of course, not the function of a reviewing court.
“[Wjhether a party is in.contempt of court is a' determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or' unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.”
Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994). We note that, if the father had properly requested our review of whether the circuit court had abused its discretion by failing to hold the mother in contempt, we would conclude that the circuit court did not abuse its discretion in light of the father’s corresponding failure to pay the mother a court-ordered property settlement and the circuit court’s refusal to hold the father in contempt.

The Child-Support Arrearage

On June 23; 2011, the circuit court ordered the mother to pay $82 per week, in child support. It is undisputed that the mother failed to pay child support and that a-child-support arrearage existed. On-the first day of the two-day trial, the father testified that the mother owed $12,710. in past-due child support, plus interest. On the -second day of the two-day trial, he testified that the mother owed a lesser amount — $11,811 ($9,348 + $2,463 in interest). The father requested that the circuit court consider a “setoff’ or credit to the mother because, according to him, he owed the mother $9,284 in the form of an unpaid property settlement. He suggested using the figure of $9,348 as the child-support arrearage and leaving off the interest to make the difference “about-zero.” ■
The mother testified that the father owed her “quite a sum” from the unpaid *106 property settlement and certain unpaid medical bills, which she estimated at $8,000 to $4,000.[1] The mother admitted that she had failed to meet her child-support obligation, but she offered excuses: “Because [the father is] currently renting that house out” and because she "had purchased clothing and school lunches "for the children.
At the close of the second day of the trial, the father’s attorney. said: “I’ve done a compound interest calculation on both, and théy’re within six hundred dollars. We’d be willing to just flatten it out as of today, because that would be [the father’s] six hundred bucks and we’ll set it off.” The' circuit-court judge replied: “I don’t think I have the authority to eliminate a real property settlement by a setoff of child support, unless it’s done by agreement.” According to the judgment, the parties agreed to the setoff; however, in his postjudgment motion, the father asserted that “no agreement was made by the parties or attorneys,” and, at the hearing on- the father’s postjudgment motion, the; father’s attorney asserted that he had made an offer to settle but that the mother had never - accepted the offer. In the mother’s response to the father’s post-judgment motion, the mother asserted that the parties had reached an agreement.
“[T]he issue of [a child-support] arrear-age is not subject to settlement between the parties, even where their agreément is sanctioned by the trial court. Court-ordered child support payments become final money judgments on the dates that they accrue and are thereafter immune from change or modification. Motley v. Motley, 505 So.2d 1228 (Ala.Civ.App.198[6]). While it is within the discretion of the trial court to modify the amount of child support due in the future, the trial court may not release or discharge child support payments once they- have matured and become due under the original divorce decree. Mann v. Mann, 550 So.2d 1028 (Ala.Civ.App.1989). Further, the trial court may not diminish the amount of arrear-age shown. Endress v. Jones, 534 So.2d 307 (Ala.Civ.App.1988). At most, the trial court has discretion only as to the amount of arrearage by giving credit to the obligated parent for money and gifts given to the child, Sutton v. Sutton, 359 So.2d 392 (Ala.Civ.App.1978), or for amounts expended while the child lived with the obligated parent or a third party. Nabors v. Nabors, 354 So.2d 277 (Ala.Civ.App.1978). Where the obligated parent has failed to make child support payments because of financial inability to-do so, the trial court may properly find the parent not in contempt, Patterson v. Gartman, 439 So.2d 171 (Ala.Civ.App.1983), but the trial court may not ‘forgive’ or set aside the accrued arrearage. State Dep’t of Human Resources v. Hulsey, 516 So.2d 720 (Ala.Civ.App.1987). Moreover, a [parent] may not waive support payments due a minor child from the child’s [other parent] under a decree of the court, nor may support provisions of the decree be nullified by agreement between the parties. Morgan v. Morgan, 275 Ala. 461, 156 So.2d 147 (1963); Mann.”
Frasemer v. Frasemer, 578 So.2d 1346, 1348-49 (Ala.Civ.App.1991); see also Slater v. Slater, 587 So.2d 376, 380 (Ala.Civ.App.1991)(“It is well settled that past-due *107 installments for [pendente lite child] support create a final money judgment.”).
A custodial parent cannot agree to waive court-ordered child support, McWhorter v. McWhorter, 705 So.2d 423, 426 (Ala.Civ.App.1997), and a trial court errs if it arbitrarily “round[s] off’ a-child-support arrearage. Endress v. Jones, 534 So.2d 307, 308 (Ala.Civ.App.1988). In this case the father could not properly agree to “flatten it out,” i.é., forgive the mother’s child-support arrearage because the father owed á comparable amount as a property settlement, and the circuit court could not round off what could only be an estimated child-support arrear-age. Thus, because a trial court has no power to forgive an accrued child-support arrearage, Moloney v. Papie, 95 So.3d 9, 12 (Ala.Civ.App.2012), the circuit court erred.
Based on the foregoing, we conclude that the circuit court did not err by separating the children, by requiring the mother to travel to Fairhope to visit the younger child, by failing to “employ a more specific visitation schedule,” or by declining to find the mother in contempt. The circuit court erred insofar as it concluded that the father’s property-settlement obligations and the mother’s child-support obligations have been satisfied. We remand the cause for the entry of .a judgment consistent with this opinion.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. We infer that the- property settlement was the mother’s portion of the equity in the marital residence. From- the mother’s testimony, ■ it appears that, instead of selling the marital residence and dividing the equity as ordered, the father used the marital residence as a rental property.